[Argued August 1; decided October 8, 1894.]

# LITTLE *v.* CITY OF PORTLAND.
### [S. C. 37 Pac. 911.]

26 235
28 94

26 235
135 517

26 235
44 153

1. MUNICIPAL CORPORATIONS—DAMAGES—NEGLIGENCE.—A stipulation in a contract with a city for a public improvement that the contractor shall look for payment to a particular fund to be raised by assessment, does not relieve the city from liability for negligently delaying to raise such fund: *Com. Natl. Bank* v. *City of Portland*, 24 Or. 188, approved and followed.

2. PARTIAL ASSIGNMENT OF CHOSES IN ACTION—RIGHTS OF ASSIGNEE.—A creditor cannot, without the knowledge and consent of the debtor, split an entire demand and maintain a separate action on each part; but if part of the claim be assigned with the consent of the debtor, the assignee may sue for it without making the holders of the other parts of the demand parties.

3. PARTIAL ASSIGNMENT OF CHOSES IN ACTION—MUNICIPAL CORPORATIONS—PUBLIC POLICY.—The partial assignment of a claim against a city is not against public policy, and, in the absence of a statute to the contrary, is valid; and when a city splits up a demand of a contractor against it by executing warrants therefor in different amounts, it cannot escape liability on one of the warrants on the ground that the contract was entire, and that an action has previously been brought on another warrant.

4. MUNICIPAL CORPORATIONS—ASSIGNMENT OF CHOSE IN ACTION.—A city, by drawing orders in different amounts on the city treasurer, payable to the contractor or order, for the total sum due him under an entire contract, consents to the assignment by the contractor of such parts of his claim, so as to entitle his assignees thereof to sue separately therefor.

5. MUNICIPAL CORPORATIONS—LIMIT OF INDEBTEDNESS—STREET IMPROVEMENTS.—Though the limit of a municipal indebtedness has been reached, a contract for street improvements, providing for payment out of a fund to be raised by assessment of the locality improved, is valid, since no present indebtedness is incurred thereby.*

6. MUNICIPAL CORPORATIONS—NEGLIGENCE—DAMAGES.—The liability of the city for negligently failing to raise a fund to pay certain warrants is one arising *ex delicto*, and not *ex contractu*, and therefore the city is liable for the damages arising therefrom, though its limit of indebtedness has been reached.*

*On the question what constitutes such an indebtedness as is meant by constitutional and statutory restrictions of municipal debts the authorities are fully reviewed in a note to the Kentucky case of *Beard* v. *Hopkinsville*, 23 L. R. A. 402, and a few authorities as to what constitutes an indebtedness, within the meaning of statutes limiting municipal indebtedness, will be found in 45 Am. and Eng. Corp. Cas. 633.—REPORTER.

APPEAL from Multnomah: E. D. SHATTUCK, Judge.

This is an action brought by F. C. Little, as assignee of the Oregon Paving and Contract Company, against the City of Portland, for damages caused by the nonpayment of certain warrants amounting to one thousand one hundred dollars, drawn by the defendant upon a special fund to be raised by assessment of real property benefited by the improvement of Twelfth Street in said city. The facts out of which the cause of action arose and upon which the complaint was based are identical with those stated in the case of the *Commercial National Bank* v. *City of Portland*, 24 Or. 188, 33 Pac. 532. The defendant, after denying the material allegations of the complaint, interposed the following defenses: (1) That the city made the improvement without having acquired jurisdiction, and is therefore unable to collect the cost thereof from the owners of the property; (2) that the said contract was entire, and that the assignment to the plaintiff of a part of the amount alleged to be due thereunder was without the assent and against the wish of the defendant; that the Commercial National Bank recovered three thousand and sixty-three dollars of the city in an action founded upon similar facts arising out of the same contract; and, (3) that the City of Portland was at the time the contract was entered into in debt in a sum exceeding that prescribed by its charter as the limit of its indebtedness. A demurrer to said defenses having been sustained by the court, and the defendant declining to further plead, judgment for the amount claimed was rendered against it from which it appeals.

AFFIRMED.

*Mr. Jarvis V. Beach* (*Mr. Roscoe R. Giltner*, city attorney, on the brief), for Appellant.

Counsel for respondent assumed in the court below that this case was controlled by the case of *Commercial National Bank* v. *City of Portland*, 24 Or. 188, 33 Pac. 532, but we are unable to find any of the questions raised here disposed of by that case.    The only question before the court in that case arose on a plea in abatement, and involved the construction of certain stipulations contained in the contract for the improvement of the street, being the same contract involved in this action.    It was there decided that a stipulation in such a contract that the contractor would look exclusively for his pay to the special fund to be collected from the abutting property holders, did not preclude such contractor from securing a general judgment against the city, in a case where the officers had neglected for an unreasonably long period of time to collect the assessment out of which payment was to be made, presuming necessarily that official duty had been performed except where the contrary appeared, and that as a consequence the assessment might have been collected if the proper proceedings were instituted and continued with reasonable diligence, whereas it directly appears in this case that the contract for the improvement, the assessment based thereon, and in fact all the proceedings in connection with the improvement are null and void and that the setting in motion of the machinery and keeping the same in motion for the purpose of collecting the assessment would be futile, it being impossible to enforce collection.

There has been a former recovery upon the same contract sued on in this case of a part of the contract price of the improvement.    A demand cannot be split up in this way: *Geist's Appeals*, 104 Pa. St. 351; *Appeals of City of Philadelphia*, 86 Pa. St. 179; *Gileson* v. *Cook*, 20 Pick. 15; *Williams* v. *Webb*, 32 Iowa 577; *Chicago Railroad* v. *Nichols*, 57 Ill. 467; *Jermyn* v. *Moffett*, 75 Pa. St. 399; *City of Erie* v.

*Knapp*, 29 Pa. St. 173; *Exchange Bank v. McLoon*, 73 Me. 498.

At the time of the commencement of the proceedings for the improvement of Twelfth Street, and at the time of entering into the contract for such improvement, the limitation of the city's indebtedness under the charter had been reached: Portland City Charter, § 149; *Litchfield* v. *Ballow*, 114 U. S. 190; *Lake County* v. *Rollins*, 130 U. S. 662; *Sackett* v. *New Albany*, 88 Ind. 473; *Baltimore* v. *Gile*, 31 Md. 375; *French* v. *Burlington*, 42 Iowa, 614; *People* v. *May*, 6 Colo. 80; *Soule* v. *City of Seattle*, 33 Pac. 384; *Wormington* v. *Pierce*, 22 Or. 606; *Salem Water Company* v. *Salem*, 5 Or. 30. We desire to call the attention of the court to the peculiar language of section 149 of the charter containing the limitation. The section reads as follows: "Section 149. Except as otherwise expressly provided or permitted by this act, the indebtedness of the City of Portland must never exceed in the aggregate one hundred thousand dollars, nor shall the city ever contract any debt or assume any liability in any manner whatever by means of which it may be called upon or become bound to pay any sum of money at any time beyond the period of two years from the date of such contract or assumption." The exceptions referred to do not include this kind of a case. It requires no argument or authority to construe this provision. The language is plain, and free from ambiguity; it differs materially from section 10 in the state constitution, which reads: "No county shall create any debts or liabilities which shall singly or in the aggregate exceed the sum of five thousand dollars, except to suppress insurrection or repel invasion; but the debts of any county, at the time this constitution takes effect, shall be disregarded in estimating the sum to which such county is limited." The words "create any debts or liabilities" convey a different intent from the words, "the indebtedness of the City of

Portland must never exceed," etc.   The latter expression is stronger and broader than the former.   It has been decided by this court that the inhibition in the constitution does not apply to debts arising by operation of law because such could not be said to be created by the county, but this cannot be said of the charter provision because it refers to all debts of every kind.

*Mr. John B. Cleland* (*Mr. Wm. A. Cleland* on the brief), for Respondent.

The recovery of damages in *Bank* v. *Portland* is not a bar to the recovery of damages by the respondent.   If the action was upon the contract to recover the amount of the warrants issued by the appellant for work performed and accepted under the contract, the appellant could not defeat a recovery by showing that the full contract price was not sued for in the action.   The consideration of the contract would be deemed apportioned by the several warrants: *Township of East Union* v. *Comrey*, 9 Atl. (Pa.), 290; *National Exchange Bank* v. *McLoon*, 73 Me. 505, 40 Am. Rep. 388.

If this court shall be of opinion that the case at bar is not one where the consideration of the contract must be deemed to be apportioned by the warrants, nor one where the claim is a perfected one, and therefore either all or part passes by assignment, we respectfully submit that the admitted facts show this to be a case where the appellant consented to the division of the claim against it, and to the assignment of the several parts.   The contract was fully performed and to the satisfaction of appellant.   The appellant settled with the contractor in full, and gave as evidence of the amount it owed to him, not one warrant, but several.   There are five sued upon in this action, ten that were sued upon in *Bank* v. *Portland*, and some others

that do not appear in either action. These warrants were made payable to the contractors or order, and are in all respects the act and instrument of the appellant, and made in the form it chose and directed. It seems clear such acts of appellant may, and in this case should be, held to amount to consent that each several warrant might by the contractors be transferred to any assignee and convey a perfect title and authorize the assignee to collect the same in his own name and for his own benefit. The contractors owed to appellant no further duty. Thereafter they were to receive the amount of consideration agreed upon. This amount was by appellant severed by the issue of a series of warrants, numbered and of varying amounts according to the election of appellant. It should not now, under these circumstances, be permitted to successfully interpose a defense purely technical, the reason for which in this action wholly fails.

The last division of the answer sets forth another form of the defense of *ultra vires*, and in this connection we present a few additional authorities rather upon the general proposition than upon this particular statement of it. This is not an action brought upon the contract. The contract between the appellant and the respondent's assignor has been fully performed by the latter. Under such circumstances, even when the contract was *ultra vires*, the courts have been disposed to relieve the party who has performed and compel the party who has received and retained the benefits under the contract to reimburse the other. Sometimes this has been done by sustaining an action brought to recover the reasonable value of the benefits, labor, and materials furnished under and because of the contract; again in other cases this relief has been granted through the means of an action for damages caused by the negligence of the municipal corporation. The latter course was adopted by this court in *Commercial*

*National Bank* v. *Portland.*   Since the matter must be again considered, we submit the following cases: *Hitchcock* v. *Galveston*, 96 U. S. 351; *Pennsylvania Railroad Company* v. *St. Louis Railroad Company*, 118 U. S. 320; *Thomas* v. *Railroad Company*, 101 U. S. 86; *Read* v. *Atlantic City*, 49 N. J. Law, 569; *City of East St. Louis* v. *East St. Louis Gaslight Company*, 98 Ill. 415; *City of Galveston* v. *Loonie*, 54 Tex. 517; Morawetz on Corporations (2d ed.), § 714; Brice's Ultra Vires (2d Eng. ed.), § 769; 1 Dillon on Municipal Corporations (4th ed.), §§ 130, 138, 516.

Many of these cases go farther in principle than is required to sustain this action.   The clear and decided weight of modern authority supports the proposition that a contract *ultra vires* when executed confers a right of action upon the party who has in good faith performed it against the party who has under it received and retained benefits.   To hold otherwise causes the law itself to become an agency by which fraud can be effectually perpetrated.   A natural person would not be allowed to maintain such a defense under like circumstances.   In *Portland Lumbering Company* v. *East Portland*, 18 Or. 34, this court says: "That power (to contract) inheres in every corporation and is coextensive with its corporate powers," and approves this language: "The plea of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but on the contrary would accomplish a legal wrong."

Opinion by MR. JUSTICE MOORE.

1.   The questions presented relate to the alleged error of the court in sustaining the demurrer.   It is contended that where a city is not vested by its charter with power to improve streets and pay the expense thereof out of the general fund, it cannot be held liable on account of a breach

of duty on the part of its officers in a case where the con-
tractor agrees to look for his compensation to the fund to
be raised by assessing the property benefited by such im-
provement, unless the city can reimburse itself from such
assessment.   This question was fully discussed by LORD,
C. J., in the case of the *Commercial National Bank* v. *Port-
land,* 24 Or. 188, 33 Pac. 532, and the reason upon which
the decision there rests is so potent that it needs no
further elucidation here.

2.   It is further contended that, there being a prior
recovery of a part of the contract price of the improve-
ment, such recovery is a bar to this action.   A chose in
action, by the ancient common law, could not be assigned,
except by or to the king; but courts of equity modified
this rule and protected the assignee of a chose in action
as much as the law protected a chose in possession, and for
that purpose considered the asignee of a chose in action the
trustee of and authorized to use the name of the assignor
to recover possession: 2 Blackstone's Commentaries, 442.
This equitable modification of the ancient common law
rule was an outgrowth of a commercial era, made neces-
sary to adapt it to the condition of a trading people; and
the legislative assemblies of most of the states of the
Union, in order to keep pace with the growth and expan-
sion of business methods, have enacted laws authorizing
the asignee of a chose in action to prosecute the claim in
courts of law in his own name: *National Exchange Bank* v.
*McLoon,* 73 Me. 498, 40 Am. Rep. 388.   In our own state,
Hill's Code, § 27, provides that every action shall be pros-
ecuted in the name of the real party in interest.   Courts of
equity have in modern times further modified the rule first
adopted, and now enforce partial assignments of choses
in action, upon the theory that the interests of all the
parties can be determined in a single suit.   The debtor,
in cases of conflicting claims, if not in default, can bring

the entire fund into court where a decree can be made awarding proper distribution, without the risk of having a judgment rendered against him for the costs and disbursements of the suit: *National Exchange Bank* v. *McLoon,* 73 Me. 498, 40 Am. Rep. 388; *James* v. *City of Newton,* 142 Mass. 366, 8 N. E. 122, 56 Am. Rep. 692.   This, however, is not recognized in actions at law, when such partial assignments are made without the knowledge and consent of the debtor.   The debtor's liability usually depends upon an entire contract, and if the creditor could, without the debtor's consent, split up his claim at all, and assign any portion of it, he could do so indefinitely, and thus subject the debtor to many actions involving great outlay in costs and disbursements, not contemplated by the contract, which was limited to a single liability upon an entire demand: *Mandeville* v. *Welch,* 5 Wheat. 277.   It is well settled that a creditor cannot, without the knowledge and consent of the debtor, split up an entire demand into distinct parts, and maintain separate actions at law on each. In such a case a recovery in one action bars the others: *Smith* v. *Jones,* 15 Johns. 229; *Willard* v. *Sperry,* 16 Johns. 121; *Larziou* v. *Pioche,* 8 Cal. 536; *Herriter* v. *Porter,* 23 Cal. 385.   If, however, the assignment of a part of a claim is made with the knowledge and consent of the debtor, the assignee may bring his action upon it without making other holders of the demand parties: *Grain* v. *Aldrich,* 38 Cal. 514, 99 Am. Dec. 423; *National Exchange Bank* v. *McLoon,* 73 Me. 498, 40 Am. Rep. 388.   In such cases the rights of the plaintiff as assignee serve as the consideration for the new contract, which becomes the ground of the action.   The action is on the defendant's promise to the plaintiff, and not upon the assignment, or upon any right growing out of it: *Getchell* v. *Maney,* 69 Me. 442. The right to maintain an action based upon the debtor's assent to a partial assignment of a demand rests upon the

theory that the assignment of the property in the sum transferred to the assignee is a good consideration for the debtor's promise to pay the assignee, and that by the promise the indebtedness to the assignor is *pro tanto* discharged: *James* v. *City of Newton,* 142 Mass. 366, 56 Am. Rep. 692.

3. But defendant's counsel contend that a municipal corporation is not bound in any case to accept or recognize a partial assignment of a claim against it, and cites the case of *Appeals of the City of Philadelphia,* 86 Pa. St. 179. In that case it is conceded that an assignment of a part of a debt is valid in equity between individuals; but the court refused to apply the rule to a debt due from a municipal corporation, on the ground that the policy of the law is against permitting individuals by their private contracts to embarrass the principal officers of a municipality. In *James* v. *City of Newton,* 142 Mass. 366, 56 Am. Rep. 692, the Supreme Court of Massachusetts held that there was no ground for any such distinction in that commonwealth; nor can we see any just reason why the contract of a municipal corporation in accepting and agreeing to pay a part of a demand against it to the assignee of its creditor, should, in the absence of any statute to the contrary, be treated in a different manner from the contract of private individuals. The cause of action being upon the agreement of the city, and not upon the creditor's order, it follows that the city would be liable unless prohibited from making such contracts by its charter.

4. In the case at bar the City of Portland executed warrants, of which the following is an example:—

No. 180.         PORTLAND, Or., October 27, 1887.

*To the Treasurer of the City of Portland:*

Pay to P. H. Schoulderman & Co., or order, three hun-

dred dollars out of the funds for improvement of Twelfth Street.    Order No. 5246.                    JOHN GATES,
     $300.                                                Mayor.
     Attest: W. H. WOOD, auditor and clerk.

These warrants, amounting to one thousand one hundred dollars, were delivered to the payees named therein, and by them assigned to the plaintiff.   The city by this means split up the demand of the contractors, and ordered the treasurer to pay to them or their order the amounts named in the several warrants.   This was an acceptance and agreement on the part of the city to pay a part of the demand, and having voluntarily assumed the liability, there is no reason why it should now escape it upon the theory that the contract was entire.

5.   It is also contended that at the time the contract for the improvement of Twelfth Street was entered into the limitation of the city's indebtedness, under the charter, had been reached, which precluded the city from entering into any contract whereby its indebtedness might be increased.    That part of section 149 of the city charter applicable to the limit of the city's indebtedness is as follows: "Except as otherwise expressly provided or permitted by this act, the indebtedness of the City of Portland must never exceed in the aggregate one hundred thousand dollars."    This provision of the charter prohibited the city from entering into any contract by which its indebtedness might be increased beyond that amount, and every person who contracts with a municipal corporation, whereby an indebtedness is created, must at his peril take notice of the financial condition of the city, and whether the proposed indebtedness is in excess of the prescribed limit: *French* v. *Burlingame*, 42 Iowa, 617; *Buchanan* v. *Litchfield*, 102 U. S. 278.    It is now well settled, however, that, even though the limit of municipal indebtedness may have been

reached, an appropriation of anticipated income does not create an indebtedness, and that a contract which provides that the cost of any improvement shall be paid out of a fund expressly created therefor is valid, notwithstanding the provision of the charter as to the limit of the city's indebtedness: *Salem Water Company* v. *Salem*, 5 Or. 29; *Koppikus* v. *Commissioners*. 16 Cal. 248; *People* v. *Pacheco*, 27 Cal. 175; *East St. Louis* v. *Flannigan*, 26 Ill. App. 449; *State* v. *McCauley*, 15 Cal. 429; *People* v. *Brooks*, 16 Cal. 1; *Grant* v. *Davenport*, 36 Iowa, 396; *People* v. *May*, 9 Colo. 404, 12 Pac. 838; *Springfield* v. *Edwards*, 84 Ill. 626; *Fuller* v. *Heath*, 89 Ill. 296. The reason assigned by these decisions for the application of the foregoing rule is that materials furnished to and labor performed for a municipal corporation are exchanged for warrants, to be drawn upon the treasury and made payable out of a specific fund which has been created by an assessment or levy of taxes and appropriated to that purpose, under an agreement that the person furnishing the materials or performing the labor will rely upon the specific fund only for payment, and that the corporation shall incur no liability whatever. The contract in the case at bar contained a stipulation that the contractors should look for payment only to the fund to be raised by an assessment of the property benefited, and that they would not require the city by any legal process or otherwise to pay for the same out of any other fund; and when the improvement under the contract was completed warrants were drawn upon the treasury in favor of the contractors and made payable out of said fund.

"It is believed," says SEEVERS, J., in *Burlington Water Company* v. *Woodward*, 49 Iowa, 58, "the constitution applies, not only to a present indebtedness, but also to such as is payable on a contingency at some future day, or which depends on some contingency before a liability is created. But it must appear such contingency is sure to take place

irrespective of any action taken or option exercised by the city in the future.    That is, if a present indebtedness is incurred or obligation is assumed, which, without further action on the part of the city, has the effect to create an indebtedness at some future day, such is within the inhibition of the constitution.    But, if the fact of indebtedness depends upon some act of the city, or upon its volition to be exercised or determined at some future day, then no present indebtedness is incurred, and none will be until the period arrives, and the required act or option is exercised, and from that time only can it be said there exists an indebtedness."    So in *People* v. *Pacheco*, 27 Cal. 218, SAWYER, J., in speaking of the debts of a municipality when made payable out of a specific fund said: "True, a portion of the money provided may be stolen, or destroyed, or by reason of some unlooked for accident may not be collected or on hand when needed; and in such case a debt or liability might ultimately accrue from this cause to the extent of the deficit thus accidentally arising.    But no debt can result till the contingency arises, and the validity of the debt can only be affected to the extent of such accidental deficit."    From these decisions it would appear that no debt was created until the contingency arose, and, as the contract provided that the cost of the improvement should be paid out of the special fund, the city incurred no indebtedness until it failed to collect the fund within a reasonable time, and hence its authority to enter into the contract was not affected by the charter prohibition.

6.    It is conceded that a municipal corporation cannot escape liabilities which are cast upon it by operation of law, under a plea that its indebtedness has reached the legal limit, (*People* v. *May*, 9 Colo. 404, 12 Pac. 836,) but it is contended that such liability results from actions *ex delicto* only and that this action is *ex contractu*.    The action is to recover damages resulting from a breach of the city's

obligation, and neglect of duty in assessing and collecting the necessary fund within a reasonable time to defray the cost of the street improvement; and, in such cases, the right of recovery is not upon the contract, which has been fully performed, but upon facts and circumstances independent of the contract: 1 Dillon on Municipal Corporations, § 444. Wrong and damages constitute torts, and one may become a wrongdoer by neglecting to do something which he ought to do, whereby another suffers an injury: 1 Chitty on Pleading, 131; Cooley on Torts, 60. Unintentional wrongs consist in neglecting to perform some duty which the party has assumed by contract, or which the law has imposed by reason of some official position: Cooley on Torts, 140. "Where there is an express promise, and a legal obligation results from it, then the plaintiff's cause of action is most accurately described as assumpsit, in which the promise is stated as the gist of the action. But where, from a given state of facts, the law raises a legal obligation to do a particular act, and there is a breach of that obligation, and a consequential damage, there, although assumpsit may be maintainable upon a promise implied by law to do the act, still an action on the case, founded in tort, is the more proper form of action, in which the plaintiff in his declaration states the facts out of which the legal obligation arises, the obligation itself, the breach of it, and damage resulting from that breach": 1 Chitty on Pleading, 135. The law imposes an obligation upon the municipal corporation, when it orders an improvement of the streets, to put the necessary machinery in motion, and to prosecute in good faith and with reasonable diligence the means afforded to it, under its charter, to raise and collect the funds by an assessment of the property affected by the improvement, in order to redeem its obligations ( *Commercial National Bank* v. *Portland*, 24 Or. 188, 41 Am. St. Rep. 854, 33 Pac. 532,

44 Am. and Eng. Corp. Cas. 486); and a failure on the part of the city to comply with any requirement of the charter by which the funds may be realized would subject it to a general liability: *North Pacific Lumber Company* v. *East Portland*, 14 Or. 6, 12 Pac. 4. It will thus be seen that the law in such cases raises a legal obligation upon the part of the city to assess and collect the fund within a reasonable time, which it has failed to do, thereby causing the damage of which the plaintiff complains; and, although the plaintiff might have availed himself of some other form of action to enforce his demand, he was nevertheless entitled to bring his action as he has done for damages resulting from the neglect of the city to perform its legal obligation. In *City of Chicago* v. *Sexton*, 115 Ill. 230, 2 N. E. 263, it was held that a municipal corporation was responsible for the want of fidelity or negligence of those who are authorized to act for it. SCHOLFIELD, J., in that case said: "There is nothing new in thus holding a municipality responsible for the want of fidelity of those who act for it. Suits of that kind are of daily occurrence. The liability thus imposed is not within the constitutional and statutory limitations in regard to the creation of indebtedness." It follows that the court committed no error in sustaining the demurrer to the several defenses, and hence the judgment is affirmed.          AFFIRMED.