Argued September 5, affirmed September 25, rehearing denied November 6, 1917.

# MORRIS v. CITY OF SHERIDAN.

(167 Pac. 593.)

**Appeal and Error—Review—Record.**

1. On appeal from a judgment for plaintiff, defendant omitted from the abstract the court's findings of fact, stating that they followed the averments of plaintiff's complaint. Plaintiff in his brief admitted that fact. *Held* that, while the findings should have been made a part of the record and the practice cannot be commended, the appellate court, in view of the explanation of the parties, will determine the case on the theory that the findings followed the averments of the complaint.

**Appeal and Error—Review—Presumptions.**

2. Where the court below found for plaintiff, and its finding on defendant's counterclaim did not appear, it will be presumed that, if one was made, it was against defendant.

**Election of Remedies—What Constitutes.**

3. Plaintiff, who agreed to perform for a municipality engineering services necessary to paving of street in consideration of payment of a percentage of the cost, not having received full payment, sued the municipality in an action *ex contractu*. The city defended the action on the theory that, as the paving was to be paid out of special funds raised by special assessment, no action on the contract would lie. Plaintiff, concurring in the view, obtained a judgment of nonsuit. *Held*, that the city could not thereafter defeat an action for damages for city's negligence in collecting and disbursing special fund, on the theory that plaintiff had made an election of remedies to proceed on the contract and could not change his theory.

[As to when an election of remedies is irrevocable, see note in 10 Am. St. Rep. 487.]

**Municipal Corporations—Indebtedness—Limitation.**

4. Where an engineer, who performed services in connection with the paving of streets and was to receive a percentage of the cost, which was to be paid out of special funds created by a levy of special assessments on abutting property, sued the municipality for damages from negligence in collecting the fund, and in making payments to others whose claims were subsequent to those of the engineer, recovery cannot be defeated on the ground that the indebtedness limitation fixed by the city's charter precluded incurring of indebtedness for the payment of the engineer's services.

**Municipal Corporations—Public Improvements—Negligence.**

5. Where a city orders a local improvement to be paid for by special assessment, the duty to put the necessary machinery in motion to raise the funds devolves upon the city, and a failure to perform the duty creates a general liability, giving rise to an action *ex delicto* against the city for damages.

Municipal Corporations—Street Improvements—Payment.

6.   Though the charter of a municipality, which ordered paving to be done, payment to be made out of a special fund raised by special assessment, provided that whenever any lot, sold to collect the assessment, should bring less than the amount, the common council should supply the deficiency out of the general funds, if in its opinion the improvement was necessary, the council is not required to ascertain whether the paving was necessary, and where it did not appear that the council had expressed an opinion on that point, there is no obligation on the municipality to supply the deficiency out of the general funds.

Municipal Corporations—Public Improvement—Special Assessments—Liability of Municipality.

7.   Where a municipality directed the improvement of streets, payment to be made out of special assessments levied on adjoining property, the municipality is not liable, because it sold delinquent property for less than the amount of the assessment levied, where the property was sold for all it could obtain.

Municipal Corporations—Warrants—Nature.

8.   Warrants issued by a municipality for payment out of a particular fund, being non-negotiable promissory notes, are, on assignment to a *bona fide* holder, open to all defenses available against the original party.

Municipal Corporations—Warrants—Payment—Negligence.

9.   Plaintiff contracted with a municipality to render engineering services necessary in the construction of streets. His compensation was to be paid from a special fund raised by a special assessment on property benefited. Warrants delivered to plaintiff were prior to warrants delivered to the contractor doing the work. The contractor assigned such sums as might become due it to a bank, and the city issued its warrants payable to the order of the bank. Plaintiff, having borrowed funds from the same bank, assigned to it his warrants. *Held* that, as the bank did not own the warrants payable to plaintiff, the city was guilty of negligence, for which it must respond in damages, where it paid in full the contractor's warrants, which were subsequent to those of plaintiff, leaving those payable to plaintiff largely unpaid.

Municipal Corporations—Assignment of Warrants—Effect.

10.   The assignment of warrants issued by a municipality on a special fund, which were non-negotiable instruments, carries with it a right to sue.

From Yamhill: HARRY H. BELT, Judge.

Department 1.   Statement by MR. JUSTICE HARRIS.

J. W. Morris is attempting to recover money from the City of Sheridan because of the failure of the city to pay the full amount of twelve warrants which the city issued on account of engineering services per-

86 Or.—15

formed by him. On February 6, 1913, the city and J. W. Morris entered into a written contract by the terms of which Morris agreed

"to perform all engineering services necessary and proper in connection * * with the paving of all streets ordered to be improved and all work upon these * * streets incident thereto as ordered by the city of Sheridan during the year 1913. * * "

The defendant agreed to pay Morris for his services 5 per cent of the total cost of street improvements ordered by the city. During the year 1913, eight different streets were paved by order of the city and Morris rendered services as an engineer in the prosecution of the work. The cost of the paving, including the amount agreed to be paid to Morris, was charged against the abutting property by the levy of special assessments.

On September 13, 1913, Morris executed a writing assigning

"to the U. S. National Bank of Portland, Oregon, warrants in full for the money due or to be due me amounting to $3,700, more or less, to be drawn against my contract on various street improvements during the year 1913."

This writing was filed with the city, and pursuant to the directions given in the assignment, the defendant issued twelve warrants to the United States National Bank of Portland for all the services performed by Morris. Morris had borrowed money from the bank and the assignment was made for the purpose of securing the loans.

A separate special fund was created for each street improved and for that reason a warrant issued for services rendered by Morris in a given street was made payable from the special fund created for such street. The history of a single warrant will illus-

trate each of the remaining eleven warrants. South Bridge Street was one of the several streets ordered paved; when the improvement was completed the city issued a warrant for $125.64 payable to the order of the United States National Bank of Portland "from S. Bridge St. Imp. Fund * * for acct. J. W. Morris engineer services on S. Bridge St." The twelve warrants which were issued for services rendered by Morris aggregated $3,626.52.

The Warren Construction Company was the contractor and as such laid the pavement on each of the eight streets. On September 1, 1913, the Warren Construction Company assigned such sums as might become due to it for work to the United States National Bank of Portland; the city issued its warrants payable to the order of the bank; and these warrants, like those issued for services performed by Morris, were made payable from a specified special fund.

Some of the property owners paid the assessments against their property; some owners made application to pay their assessments in installments as permitted by the Bancroft Bonding Act; and the remaining owners allowed their assessments to become delinquent. The city attempted to collect the amount of delinquent assessments by selling the delinquent property; but, in most, if not all cases, where property was sold the land brought less than the amount of the special assessment, leaving a deficit in the special fund to which the assessment belonged.

All the street improvement work was done by the Warren Construction Company as contractor and by Morris as the engineer. While the record is not direct and certain we nevertheless understand from the argument of counsel that the city never became indebted to any one for street paving except for work

done by the Warren Construction Company and for services rendered by Morris; and, hence, the warrants issued to the bank represented all the warrant indebtedness incurred for street improvements. The warrants which had been issued to the bank for work done by the Warren Construction Company were presented and paid in full. The warrants which had been issued to the bank for services rendered by Morris were presented to the city but because of a want of funds none of the warrants were paid in full although part payments aggregating $829.62 were made on the principal of four of the warrants while no payments at all were made on the remaining eight warrants, leaving an unpaid balance on the principal amounting to $2,796.90.

On April 15, 1916, Morris began an action against the city for the recovery of the unpaid portion of the amount earned by him. The complaint in that action recited the making of the contract with the city, the street improvements, the total amount earned by Morris, the sums paid by the city, alleged that the balance was due and unpaid and demanded a judgment for the balance. The first action was purely an action *ex contractu* and proceeded upon the theory that since the city had agreed to pay for services rendered by Morris he was entitled to a judgment on the contract for the unpaid balance earned by him. The complaint did not contain any averments concerning the issuance of warrants; nor did it allege that the city had agreed to create a special fund, but it was framed on the theory that the liability of the city constituted a general obligation which was payable out of the general fund. While the record presented to us in the instant case is not as clear as it should be, we understand from the abstract and briefs here that

the city claimed in the first case that the action was barred by the indebtedness limitation in the charter and that Morris acknowledged the correctness of the contention made by the city by voluntarily moving for a judgment of nonsuit.

After reciting the contract made with the city, the street improvements ordered by the defendant, the services rendered by Morris, and the issuance of warrants for the services rendered by him, the complaint alleges that the parties agreed,

"that the plaintiff should look for payment only to the special fund to be assessed against the property liable for such improvements and collected and paid into the city treasury, or in any other lawful manner created by the council of the defendant city of Sheridan in accordance with the provisions of its charter, for that purpose."

The plaintiff avers that he had borrowed money from the bank and that the warrants for services rendered by him were issued to the bank merely as security; and that the warrants had been assigned to him prior to the commencement of this action. The complaint charges the city with negligence by alleging that it failed to collect or create a sufficient fund to pay all the warrants "although a reasonable time had elapsed to enable the defendant so to do"; that the city sold lots and parcels of land "for trifling sums compared with the amounts assessed against the same" and for sums disproportionate to the value, "and that by reason of said negligent and careless conduct on the part of the defendant, the defendant has wholly exhausted all means provided by the charter" for the collection of special assessments for the creation of special funds; that the city has also been guilty of negligence by failing to supply the bal-

ance of the special fund from the general fund; and that the city exhausted the special funds by wrongfully paying the warrants which had been issued for the work done by the Warren Construction Company notwithstanding the fact that they were "subsequent in date and order" to the warrants issued for the services rendered by Morris.

The answer denies that the city was guilty of negligence and pleads the indebtedness limitation fixed by the charter as one of the excuses for the failure to pay the warrants. The city seeks to avoid liability for paying the Warren Construction Company warrants by alleging that all warrants had been issued to the bank and were owned by it; that the defendant "paid said warrants issued to said U. S. National Bank in such order as the said bank desired and wholly exhausted all special funds"; and that therefore no damage could have been done by paying one warrant in preference to another. The answer pleads a counterclaim arising out of the claim that the city was damaged in the sum of $4,000 on account of a failure of Morris to perform his full duty as an engineer; and, finally, the defendant attempts to estop the plaintiff from prosecuting this action by alleging that the commencement of the first action operated as an election of remedies and precluded Morris from maintaining this second action.

The reply alleges that the Warren Construction Company had borrowed money from the United States National Bank and in order to secure the loans had caused the warrants for moneys earned by the company to be issued to the bank; that the city knew that the warrants were issued as security for loans; that by reason of information appearing on the face of the warrants the city knew what warrants were held as

security for loans to Morris as well as what warrants were held to secure loans to the Warren Construction Company; and that an officer of the company presented the Warren Construction Company warrants in behalf of the company and the city knowing that such person was such officer and was presenting the warrants for the company, paid the warrants and exhausted the special funds, although the city knew that the Morris warrants were prior in date and were still outstanding and unpaid.

The cause was tried without a jury and comes to this court on an appeal from a judgment for the plaintiff.

AFFIRMED.

For appellant there was a brief over the names of *Mr. W. O. Sims, Mr. William H. Trindle* and *Mr. Walter C. Winslow,* with oral arguments by *Mr. Sims* and *Mr. Trindle.*

For respondent there was a brief over the names of *Mr. Frank S. Grant, Mr. R. A. Imlay* and *Mr. Richard W. Montague,* with an oral argument by *Mr. Grant.*

Mr. Justice Harris delivered the opinion of the court.

1. The findings made by the trial judge do not appear in the record. However, the abstract informs us that the findings are omitted "for the reason that they follow almost *verbatim,* the allegations of plaintiff's complaint and for the purposes of this appeal reference can be had to the complaint for matters concerning the said findings." The respondent states in his brief that:

"The trial court found in favor of the respondent and against the appellant on all the material issues. Its findings are embodied in formal findings of fact,

which substantially follow the allegations of the complaint and, for that reason, are omitted from the appellant's abstract.''

The findings should have been made a part of the record; and, yet, while we disclaim any intention of approving the practice followed in the instant case, we shall proceed to examine the questions presented by the litigants. Our inquiry will be made, however, in the light of the explanation of the parties that the findings follow the allegations of the complaint.

The complaint charges that the city was negligent because: (1) It did not use reasonable diligence in supplying special funds for the payment of the warrants; and (2) such moneys as were in the special funds were wrongfully applied in payment of the Warren Construction Company warrants. The defendant denies the accusation of negligence and claims that: (1) It was damaged because Morris failed to perform his duty as engineer; (2) the commencement of the first action operated as an election of remedies and forever precluded Morris from availing himself of any other remedy; (3) the indebtedness limitation prescribed by the charter bars the prosecution of the action; and (4) since the bank held all the warrants, no injury could have resulted by paying one warrant in preference to another.

2. But little notice need be given to the counterclaim pleaded by the city. If the trial court made a finding concerning the counterclaim the finding was presumably against the city. If, however, no finding was made about the counterclaim, then it is sufficient to say that the record shows that Morris performed his full duty as engineer and there is no evidence to justify the city's claim for damages.

3. The contention that the commencement of the first action was an election of remedies and that therefore the plaintiff is estopped from prosecuting the instant action cannot be sustained. The city defended the first action by arguing that Morris was not entitled to the remedy at all. Apparently Morris concurred in the view taken by the city and obtained a judgment of nonsuit; and, therefore, the city cannot now well claim that its position was erroneous: *Rehfield* v. *Winters,* 62 Or. 299, 306 (125 Pac. 289). The first action was fruitless because of the contention of the city that the remedy selected by Morris was not available to him. If Morris attempted to make use of only a fancied remedy, then that barren attempt does not preclude him from afterwards pursuing a remedy to which he is actually entitled: *Zimmerman* v. *Robinson & Co.,* 128 Iowa, 72 (102 N. W. 814, 5 Ann. Cas. 960); *Powell* v. *Dayton S. & G. R. R. Co.,* 16 Or. 33, 43 (16 Pac. 863, 8 Am. St. Rep. 251).

4. The indebtedness limitation fixed by the charter cannot of itself and standing alone defeat a recovery in this action if the services rendered by Morris were to be paid for with moneys from special funds created by the levy of special assessments on abutting property. The ruling in *Little* v. *Portland,* 26 Or. 235, 246 (37 Pac. 911), is decisive here. Presumably the trial court followed the allegations in the complaint and found that the parties agreed that Morris should look only to special funds to be created by assessing the cost to abutting property. Moreover, every act done by the defendant harmonizes with the claim made by Morris. The city included the cost of Morris' services in the amount which was assessed against the abutting property as the cost of the improvement; the city created a special fund for every street improvement and each

warrant which the city drew for Morris' services was drawn on a special fund. When Morris contracted with the city and, at all times since, the indebtedness of the city exceeded the limitation fixed by the charter; and, hence, the city contends and Morris concedes that the contract was unlawful if it contemplated payment out of the general fund. Payment out of the general fund was unlawful while payment out of the special fund was lawful. In view of all the evidence the city cannot well claim that it contracted to do an unlawful rather than a lawful act.

5. The charter invests Sheridan with the power of ordering a local improvement and affords the means for raising funds to pay for the improvement by assessing the cost to the adjoining lots. When the city orders a local improvement the duty devolves upon it to put the necessary machinery in motion to raise the funds to pay for it by assessment upon the property benefited; and a failure to perform this duty creates a general liability and gives rise to a right of action *ex delicto* against the municipality for damages: *Commercial National Bank* v. *Portland,* 24 Or. 188 (33 Pac. 532, 41 Am. St. Rep. 854); *Little* v. *Portland,* 26 Or. 235 (37 Pac. 911); *Jones* v. *Portland,* 35 Or. 512 (58 Pac. 657); *O'Neil* v. *Portland,* 59 Or. 84 (113 Pac. 655); *Dennis* v. *Willamina,* 80 Or. 486 (157 Pac. 799). The record conclusively shows that the city exercised all its chartered powers for the creation of appropriate special funds. Assessments were levied; some property owners paid their assessments; some owners availed themselves of the privilege of paying in installments as permitted by the Bancroft Bonding Act, and the city then exercised its right and sold bonds equal in amount to the assessments brought within the Bancroft Bonding Act and thus raised funds equal in

amount to the assessments brought within the protection of the Bancroft Bonding Act; and assessments which became delinquent were reduced to money by selling the delinquent property for as much as the property was worth.

6. The plaintiff argues, however, that Section 86 of the charter makes it the duty of the city to supply the deficit in a special fund by taking the money out of the general fund. Section 86, so far as it is material here, reads thus:

"Whenever any lot or part thereof sold under the provisions of this charter shall bring less than the assessment thereon, the common council shall supply the deficiency out of the general fund, if in the opinion of the council such improvement is necessary."

It is not necessary to determine whether Section 86 contemplates that the council can transfer moneys from the general fund to a special fund when the indebtedness exceeds the limit fixed by the charter; nor need we ascertain whether the words "shall supply the deficiency" mean "may supply the deficiency"; but it is sufficient to say that the charter does not compel the council to ascertain whether the paving was necessary; and since the council has not expressed the opinion that the paving was necessary it follows that, even though it be assumed that the charter permits it, there is no obligation to supply the deficiency out of the general fund.

7. The deficits in the special funds resulted from the sale of delinquent property for less than the amount of the assessments charged against such property. The contention made by the plaintiff that the city is liable because it sold delinquent property for less than the amount of the assessment levied upon such property cannot be sustained. In every instance the

property was sold for as much as it was worth; the city obtained all that it could obtain for the property and therefore it is not liable: *Creighton* v. *Toledo,* 18 Ohio St. 447; *New Albany* v. *Sweeney,* 13 Ind. 245; 28 Cyc. 1060.

The city employed every means afforded to it by its charter to raise the special funds contemplated by the parties; it left nothing undone; and, indeed, in the language used by the plaintiff in his initial pleading

"the defendant has wholly exhausted all means provided by the charter of said defendant City of Sheridan for the collection of said special assessments against the abutting property for the creation of said special fund."

Neither the charter nor any ordinance prohibited the municipality from selling delinquent property for less than the amount of an assessment. The defendant was not negligent in the creation of the special funds.

8, 9. If the city is liable at all it is only because it exhausted all the special funds by paying the Warren Construction Company warrants. The warrants issued by the city are non-negotiable promissory notes and even in the hands of *bona fide* holders are open to all defenses available against the original party. The warrants were assignable subject to any defense existing in favor of the municipality against the original holder at the time of the assignment: *Goldsmith* v. *Baker City,* 31 Or. 249, 252 (49 Pac. 973); *Frankl* v. *Bailey,* 31 Or. 285, 291 (50 Pac. 186); *Clatskanie State Bank* v. *Rainier,* 72 Or. 243, 246 (143 Pac. 909); *Morrison* v. *Austin State Bank,* 213 Ill. 472 (72 N. E. 1109, 104 Am. St. Rep. 225, 233); 11 Cyc. 538; 1 Daniel on Neg. Inst. (6 ed.), § 427; 5 McQuillin on Mun. Corp., § 2256. If, therefore, the United States

National Bank owned all the warrants which had been issued for the street improvements, and if those warrants could only have been paid with moneys in the special funds, no injury would have been caused if the bank presented and received payment on warrant No. 20, even though such payment exhausted the fund and rendered the city unable to pay warrant No. 1. If, however, Morris owned the warrants which had been issued for his services and if the Warren Construction Company owned the warrants which had been issued for the work performed by it and the city had notice of such ownership, then the municipality was bound to pay the warrants in the order of their priority. The warrants which had been issued for the work done by the Warren Construction Company were presented to the city by the treasurer of the Warren Construction Company to whom the city paid the full amount of the warrants. The complaint contains an allegation that the city

"negligently paid warrants subsequent in date and order to the aforesaid warrants of the plaintiff, well knowing that said warrants so paid ahead of the warrants of the plaintiff were the property of persons other than the plaintiff";

and it is to be presumed that the court made a finding in accordance with the allegations of the complaint as stated by the parties. There was evidence to support such a finding, and, hence, it will not be necessary to make further inquiry into the question of fact. By paying the Warren Construction Company warrants the city exhausted every one of the eight special funds with the result that the company received payment on all its warrants, while Morris only received part payment for work done on four streets and no payment at all for work done on the remaining four streets.

It is true that neither the charter nor any ordinance directs the order in which the warrants shall be paid, but it is also true that the absence of legislation did not authorize the city to pay the Warren Construction Company warrants, which were subsequent in order, to the injury of Morris who held warrants which were prior in order to those paid. By paying the Warren Construction Company warrants ahead of the Morris warrants the city was guilty of negligence and it is liable to Morris for the loss sustained by him: *Northampton First Nat. Bk.* v. *Arthur,* 10 Colo. App. 283 (50 Pac. 738) ; 12 Colo. App. 90 (54 Pac. 1107) ; *Northwestern Lumber Co.* v. *Aberdeen,* 22 Wash. 404 (60 Pac. 1115) ; *La France Fire-Engine Co.* v. *Davis,* 9 Wash. 600 (38 Pac. 154) ; *Red River Valley Nat. Bk.* v. *Fargo,* 14 N. D. 88 (103 N. W. 390) ; 28 Cyc. 1572; 5 McQuillin on Mun. Corp., § 2254. We do not undertake to say whether a court of equity could have prorated the special funds among the outstanding warrants before any payments were made. We merely hold that the act of the city injured Morris and the city must respond in damages.

10. The assignment of the warrants carried the right to prosecute this action: *Ramsey* v. *Johnson,* 8 Wyo. 476 (58 Pac. 755, 80 Am. St. Rep. 948) ; 2 Am. & Eng. Ency. Law (2 ed.), 1084; 2 R. C. L., p. 633. And see: *Little* v. *Portland,* 26 Or. 235 (37 Pac. 911).

Other questions are discussed in the briefs but it is sufficient to say that we have examined them and conclude that the judgment should be affirmed, and it is so ordered.          AFFIRMED.     REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE BENSON concur.