(No. 6453. December 3, 1937.)

STELLA M. CRUZEN, GENEVIEVE C. LUNDY and EDWARD A. CRUZEN, Executrices and Executor of the Estate of JOHN B. CRUZEN, Respondents, v. BOISE CITY, IDAHO, a Municipal Corporation, Appellant.

[74 Pac. (2d) 1037.]

408

Thornton D. Wyman, Maurice H. Greene and Z. Reed Millar, for Appellant.

W. H. Langroise and W. E. Sullivan, for Respondents.

GIVENS, J.—Respondents' predecessor in interest, John B. Cruzen, now deceased, originally plaintiff, owned bonds Nos. 38 to 44 inclusive of Local Paving District No. 26 of appellant city amounting to $3,422.68. The balance of the bonds of said district have been paid in full. The property owners in the district paid to the city clerk of said appellant sufficient money to pay all the bonds of said District in full. The city clerk never paid part of said amount to the city treasurer, but embezzled the same and respondents have never received the principal of their bonds, though interest was paid thereon to May 1, 1933. This action is by respondents against appellant to recover the face value of, and remaining unpaid interest on, the bonds on the theory that the city is responsible for the dissipation of the money by the city clerk after payment by the property owners to and collection by her. The trial court found in favor of respondents, hence this appeal.

The defense is bottomed on three propositions: First, that the city is not liable because the statutes, in part quoted below, carried into, and under which, the bonds were issued provide that no liability was or can be created against the city for the payment of the bonds;

" . . . . Any city whose charter provides for the issuance of bonds for local improvements, payable only from the proceeds of special assessments, is hereby authorized to issue such bonds in the manner and with the effect provided in this chapter, and the holder of any such bonds shall look only to the fund provided by such assessment for the principal or interest of such bond." (I. C. A., sec. 49-2727.)

"The holder of any bond issued under the authority of this chapter shall have no claim therefor against the municipality by which the same is issued, in any event, except for the collection of the special assessment made for the improvement for which said bond was issued, but his remedy, in case of nonpayment, shall be confined to the enforcement of such assessments. A copy of this section shall be plainly written, printed or engraved on the face of such bond so issued." (I. C. A., sec. 49–2728.)

" . . . . Each bond shall provide that the principal sum therein named and the interest thereon shall be payable out of the local improvement fund created for the payment of the cost and expense of such improvement and not otherwise." (I. C. A., sec. 49–2720.)

Second, that the city clerk had no authority to collect or receive these assessments. Third, that the cause of action is predicated upon the default of a public officer and is an obligation or liability, if any, created by statute barred in three years under subd. 1, sec. 5–218, I. C. A., and more than three years had elapsed at the time of the institution of this suit, March 4, 1936, from the maturing of the bonds November 1, 1932.

Respondents contend because of these emphasized provisions in the statute below, the city is responsible for the acts of its employee, the city clerk, in embezzling the money after its collection and receipt and that the statute makes this exception as to the city's liability:

"The holder of any bond issued under the authority of this Article shall have no claim therefor against the municipality by which the same is issued, in any event, *except for the collection of the special assessments made* for the improvement for which said bond was issued, but his remedy, in case of non-payment, shall be confined to the enforcement of such assessments. . . . . " (Emphasis ours.)

Sec. 49–2728, *supra,* and provision of bonds.

In other words, respondents recognize that in so far as the initial security is concerned, no claim could be made against the city, only against the property in the district, and this is correct, but respondents urge the statute recog-

nizes that the city is liable for the collection of the assessments and that the general rule applicable to a private trust would apply, resulting in the responsibility of the trustee for the defalcation of his agent. (*Smith v. Boise City*, 18 Fed. Supp. 385; *City of Seattle v. Stirrat*, 55 Wash. 560, 104 Pac. 834, 24 L. R. A., N. S., 1275; *Rothschild v. Village of Calumet Park*, 350 Ill. 330, 183 N. E. 337; *Blackford v. City of Libby*, 103 Mont. 272, 62 Pac. (2d) 216, 107 A. L. R. 1348; *State v. Bailey*, 99 Mont. 484, 44 Pac. (2d) 740; generally, 65 C. J. 665, sec. 529, 65 C. J. 666, sec. 529, note 36; *Meyers v. City of Idaho Falls*, 52 Ida. 81, 11 Pac. (2d) 626; *Wheeler v. City of Blackfoot*, 55 Ida. 599, 45 Pac. (2d) 298.)

Appellant counters to this proposition with the argument that so to do would make the city liable as on a general obligation, contrary to the other provisions of the statute limiting recovery to the property in the improvement district. The plain reading of the statute however supports respondents and not appellant. The statute says the holder of bonds shall have no remedy against the municipality "except for the collection of the special assessment." The legislature intended the statute should mean something and the evident interpretation is that the city would be liable for the *bona fide* collection of the assessments. Thus the statute itself makes an exception as to collection, and the collection would be of no avail unless the money collected is disbursed as it should be.

This court has held the municipality responsible for the unlawful diversion of special assessments of this kind after their receipt by the municipality. (*Bosworth v. Anderson*, 47 Ida. 697, 280 Pac. 227, 65 A. L. R. 1372.)

"The city never received the amount diverted to the Predatory Animal Fund and the county should be held liable therefor.

"The balance was paid to the city but diverted by the city for purposes other than the payment of the bonds involved herein. For this diversion the city and not the county is liable."

The bondholder has no control of the municipal agents and unless protected by liability on the part of the city which

selects and does control its agents, would be without any redress whatever. The statute evidently recognized this by making the above noted exception. As generally supporting liability on the part of the city herein see *Henning v. City of Casper*, (Wyo.) 57 Pac. (2d) 1264.

■■ Appellant contends the city clerk had no legal authority to receive or receipt for local improvement assessments, apparently urging that the payment should be made to the county tax collecting officer under I. C. A., secs. 49–2715, 49–1711, subdivision 14, section 48, chapter 1, Local and Special Laws, 1927, page 34. However, section 49–2721, I. C. A., authorizes the collection of these assessments by the city clerk, and no reason or authority has been cited to the effect that the two methods could not both be valid, though it is unnecessary for us to decide this because of the stipulation which recites as follows:

"That the aforesaid Angela Hopper sent out each year to the owners of property in said Improvement District No. 26, notices of the amount of the annual assessment of such special assessment and when the same would become delinquent, and that such installment was due and to be paid at the office of the City Clerk of said defendant Boise City. There is attached hereto and marked Exhibit B a copy of the form of said notice and made a part hereof:

"That pursuant to said notice the owners of property in said Improvement District No. 26 came to the City Clerk's office of said City of Boise and there paid to said City Clerk such sums, and received from said City Clerk a receipt for such special assessment signed by said City Clerk. A copy of the form of receipt so used is attached hereto, marked Exhibit C, and made a part hereof; . . . . "

The city cannot now question the legality of its acts since there was statutory authority therefor and it assumed to and did proceed under said statute.

■ Furthermore, the municipality has adopted and ratified the acts of the city clerk in collecting these assessments because other assessments collected and received by her and not embezzled were through the medium of the city treasurer properly paid to other bondholders, and to respondents' predecessor in interest in the way of interest. Thus to sustain

appellant's contention we would have to in effect say the municipality had been guilty of an infraction of the law by not certifying these assessments to the county authorities and having them collected under I. C. A., sec. 49–2715, *supra.*

*Broad v. City of Moscow,* 15 Ida. 606, 99 Pac. 101, relied upon by appellant is not in point as it involved only the delivery of bonds to a contractor after completing his contract and had nothing to do with payment or collection of assessments by the city.

While there are authorities to the contrary[1] the better reasoned rule as applied to this statute supports the judgment. *Smith v. Boise City, supra; Blackford v. City of Libby, supra; State v. Bailey, supra; City of Seattle v. Stirrat, supra; Potter v. City of New Whatcom,* 20 Wash. 589, 56 Pac. 394, 72 Am. St. 135; *Henning v. City of Casper, supra.*

All funds collected by appellant through the city clerk by means of the improvement district assessments were trust funds pledged exclusively to the payment of the bonds issued against the special assessments. (*Meyers v. City of Idaho Falls, supra; Wheeler v. City of Blackfoot, supra; Kite v. Eckley,* 48 Ida. 454, 282 Pac. 868; *Thompson v. Clark et al.,* 6 Cal. (2d) 285, 57 Pac. (2d) 490; 2 Page & Jones Taxation by Assessment, p. 217, sec. 1512; *State v. Exchange Nat. Bank of Tulsa,* 172 Okl. 361, 45 Pac. (2d) 759. It is unnecessary to critically or exactly classify this trust because in any event the statute applicable is not sec. 5–218, I. C. A., but a four year period as declared in the cases below, holding the statute of limitations does not commence to run until a trust of this nature is repudiated:

"The rule, contended for by appellant, which would continue the trust in operation until repudiated by the trustee, applies to continuing, express or voluntary trusts. (Citing *Davenport v. Bird,* 45 Ida. 280, 261 Pac. 769; Pomeroy's Eq. Jur., 4th ed., vol. 4, sec. 1449.) In order to start the running of the period of limitation such a trust must be terminated, and the period is four years, dating from notice to

---

[1] *Real Estate Land, Title & Trust Co. v. Town of Fairfax,* 11 Fed. Supp. 459; *Fox v. City of Pasadena,* 78 Fed. (2d) 948; *Municipal Bond Co. v. City of Riverside,* 138 Cal. App. 267, 32 Pac. (2d) 661.

the *cestui que trust*, of its termination.'' (*Brasch v. Brasch,* 55 Ida. 777, at 783, 47 Pac. (2d) 676.)

''The findings of the court support the conclusion that a voluntary, continuing obligation, resting in parol, arose in favor of the plaintiff by the understanding and agreement of the parties. In cases where such an obligation arises, and has been recognized under an oral or parol agreement the statute of limitations does not begin to operate until the trustee begins to act in hostility to the obligation imposed by the agreement, with knowledge of the repudiation unequivocally brought home to the *cestui que trust.* (Citing cases.)'' (*Davenport v. Bird,* 45 Ida. 280 (at 285), 261 Pac. 769.)

There was no repudiation herein until within four years of the bringing of the suit.

Sec. 49–2728, I. C. A., *supra,* did not *create* the liability, it does not require the city to make good the defalcations of its officers, it merely removed any bar to the enforcement of the trust against appellant by respondent, which might have existed because the bonds were not general obligations of the city. As applicably stated in *Feehan v. Kendrick,* 32 Ida. 220, at 223, 179 Pac. 507:

''By this statute no new liability of the stockholder (trustee) is created, but an old one recognized and made available to corporate creditors (holders of special improvement bonds.)''

The cause of action arose by reason of appellant's breach of trust. This cause of action is not based on the statute but is based on the obligation resting on every trustee to fulfil and comply with the terms of the trust. Substituting for the wording in *Jensen v. Aikman,* 32 Ida. 261 (at p. 264), 181 Pac. 525, we have: ''The liability of a trustee to his *cestui que trust* for trust funds is not created by statute within the meaning of subd. 1, sec. 5–218, but is a trustee's obligation created by the terms of the trust.'' The cause of action not being created by statute, it is not a statutory liability governed or barred by section 5–218, I. C. A.:

''Finally, it is argued that a part of this claim is barred by the provisions of subd. 1, sec. 4054, Rev. Codes. That statute provides, 'An action upon a liability created by stat-

ute, other than a penalty or forfeiture,' shall be commenced within three years after the cause of action accrued. We cannot agree that this is the kind of an action contemplated by subd. 1, sec. 4054. This cause of action was not created by statute. On the contrary, we think it is governed by the provisions of sec. 4053, which provides that 'An action upon a contract obligation, or liability not founded upon an instrument of writing,' shall be commenced within four years from the accrual thereof. This is clearly an action upon a contract. . . . . '' (*Lincoln County v. Twin Falls N. S. L. & W. Co.*, 23 Ida. 433 (at 440), 130 Pac. 788.)

The above case considered sec. 2124, Rev. Codes, to be in effect a contract comparable to considering secs. 49–2723, I. C. A., and the underlying ordinances[2] all carried into, and in effect made provisions of the bonds, as constituting the contract between the city and the bondholders creating the trust but not creating the liability for violation of the trust, which later arises by operation of law when a trust comes into existence.

"It is contended that, the school districts possessing no powers and being bound to no duties except those prescribed by statute, the action here is one upon 'a liability created by statute other than a penalty or forfeiture' as prescribed by the first subdivision of the section (sec. 5–218). It is true

---

[2] "Section 7. That all assessments hereinbefore specified shall be known as 'Special Assessments for Improvements,' and shall be levied and collected as separate taxes, in addition to the taxes for general revenue purposes, . . . . ''

"Section 8 . . . . For the payment of installments on such bonds, there is hereby levied annually special assessments against the specific property fronting, abutting, contiguous or tributary to the proposed improvements, as hereinbefore provided sufficient to redeem the installments of such bonds next thereafter maturing with interest thereon not to exceed seven per cent. (7%) per annum from the date of the issuance of said bonds until the date of maturity of the installments of bonds next thereafter maturing. . . . . ''

"Section 9 . . . . All such assessments shall be paid to the City Clerk and same shall be by her turned over to the City Treasurer, who shall receipt therefor, and all sums so paid shall be applied solely to the payment of such improvements or the redemption of the bonds issued therefor.

that the right to maintain the action and to sue the districts is statutory but it is likewise true that the cause of action arises out of the 'mistake' (breach of trust) (referred to in subd. 4, sec. 5–218) made by the public officer charged with the duty of apportioning the funds; and that but for the mistake (breach of trust) the cause of action would not have accrued. It therefore follows that the statute was tolled until the *mistake* (breach of trust) was discovered (trust was repudiated)." (*Independent School Districts, etc., v. Common School Dist. No. 1*, 56 Ida. 426 (at 435), 55 Pac. (2d) 144, 105 A. L. R. 1267; *Van Auken v. Garfield Tp.*, 66 Kan. 594, 72 Pac. 211; *City of Butte v. Goodwin*, 47 Mont. 155, 134 Pac. 670, Ann. Cas. 1914C, 1012.)

"While the liability of a county treasurer and his bondsmen for the safekeeping of moneys of the county and all moneys required by statute to be deposited with him is one imposed by express statutory requirement, and an action thereon falls within the limitation of the above section (*Gallatin County v. United States Fidelity & Guaranty Co.*, 50 Mont. 55, 144 Pac. 1085), this proceeding is not such an action. Here the treasurer is not a party, and the action is against the county only, either 'for an accounting' or 'for money had and received.' But, if the action were against the treasurer for failing to pay over the interest and sums collected as penalty, the above section would not be applicable, as the liability of the treasurer would be on an implied promise, as trustee of the funds, to pay them over and the applicable statute would be subdivision 3 of section 9031 (secs. 5–217, 5–224, I. C. A.)—a three year limitation on an action upon an obligation or liability, not founded upon an instrument in writing, other than a contract, account, or promise.' (Citing *City of Butte v. Goodwin, supra.*) (*School Dist. No. 12 of Pondera County v. Pondera County*, 89 Mont. 342, 297 Pac. 498, at 502.)"

It is immaterial whether we consider the cause of action here to be governed by sec. 5–217 or 5–224, I. C. A., it is not barred.

Judgment *affirmed*. Costs awarded to respondents.

Morgan, C. J., Holden, Ailshie, and Budge, JJ., concur.

ON PETITION FOR REHEARING.

(January 13, 1938.)

GIVENS, J.—Appellant asks for a rehearing urging:

That the court erred in holding appellant liable by reason of the defalcation of the city clerk, in that such liability, since it exceeded the revenues for the year, not based on a vote of the people, violates section 3, article 8 of the constitution; citing *Feil v. City of Coeur d'Alene*, 23 Ida. 32, 129 Pac. 643, 43 L. R. A., N. S., 1095, *Boise City Dev. Co. v. Boise City*, 26 Ida. 347, 143 Pac. 531, *Miller v. City of Buhl*, 48 Ida. 668, 284 Pac. 843, 72 A. L. R. 682, and *Williams v. City of Emmett*, 51 Ida. 500, 6 Pac. (2d) 475, in support of such contention.

*In limine* we call attention to *Grand Lodge, A. O. U. W., v. City of Bottineau*, 58 N. D. 740, 227 N. W. 363 and *Likes v. City of Rolla*, 190 Mo. App. 140, 176 S. W. 520, as further supporting the city's responsibility to respondent for the funds received and embezzled by the clerk, thus lost to both appellant and respondent.

The authorities so cited by appellant did not consider, or pass upon a situation like the one at bar, and their non-applicability herein clearly appears by consideration of the conclusions in the cases below, where the bases of the actions were negligence on the part of the municipality, i. e., its officers in regard to the collection or disbursement of special funds as herein, or other negligence, and the same point urged as above. In the cases cited by appellant there was in effect voluntary action on the part of the municipality held to constitute the incurring of liability—though potential and not immediate liability—not so herein. Within the meaning of section 3, article 8 of the constitution, the city did not *incur* the liability herein. (*Little v. City of Portland*, 26 Or. 235, 37 Pac. 911, 913; *Morris v. City of Sheridan*, 86 Or. 224, 167 Pac. 593; *City of Long Beach v. Lisenby*, 180 Cal. 52, 179 Pac. 198; *Metropolitan Life Ins. Co. v. Deasy*, 41 Cal. App. 667, 183 Pac. 243; *Cary v. Long*, 181 Cal. 443, 184 Pac. 857; *J. H. Tillman Co. v. City of Seaside*, 145 Or. 239, 25

Pac. 917; *Mills v. Houck,* 124 Cal. App. 1, 12 Pac. (2d) 101, concurring opinion; *Intermela et al. v. Perkins,* 205 Fed. 603; *Ft. Dodge Elec. Light & P. Co. v. City of Ft. Dodge,* 115 Iowa, 568, 89 N. W. 7, at 10; *American Company v. City of Lakeport,* 220 Cal. 548, 32 Pac. (2d) 622, 626; *Martin v. Fisher,* 108 Cal. App. 34, 291 Pac. 276; *Barker v. State,* 39 N. M. 434, 49 Pac. (2d) 246; *Lotts v. Board of Park Commrs.,* 13 Cal. App. (2d) 625, 57 Pac. (2d) 215, 221; 94 A. L. R. 837n; 44 C. J. 1135, sec. 4073.)

This court expressly recognized the above distinction (i. e., liability for negligence of the kind considered herein) in *Hughes v. Village of Wendell,* 47 Ida. 370, 275 Pac. 1116, in commenting on *Little v. City of Portland, supra,* and *Fort Dodge Elec. Light & P. Co. v. City of Ft. Dodge, supra,* thus:

"No neglect in making the estimate or contracts, or in levying or collecting the assessments is charged or proven. . . . .

"All of the above cases are readily distinguishable from the case at bar, the same point being substantially raised in all, because in the above cases there was either no law permitting the special assessments or the city did not comply with the law or neglected some specific duty. . . . . "

Herein the city was charged with negligence.

Holding the city liable herein, therefore, does not violate the constitution.

Petition for a rehearing *denied.*

Holden, C. J., and Morgan, Ailshie, and Budge, JJ., concur.