## Gable, Appellant, *v.* Altoona.

200
e208

15
²385

*Municipalities—Municipal bonds—Assessments.*

Where a city issues bonds payable out of assessments on property, and subsequently the assessments are declared illegal because both branches of city councils had passed the ordinances providing for the assessments on the same day, the illegality of the assessment does not relieve the city from liability on the bonds.

*Municipality— Municipal bonds — Increase of indebtedness — Constitutional law.*

Where a city in good faith provides that bonds issued for street paving shall be payable out of assessments on property, and it turns out that such assessments are illegal because of the improper manner in which the ordinances authorizing them were enacted, the city is liable for the bonds although at the time of their issue they increased the debt beyond the constitutional limitation.

Argued April 24, 1901. Appeal, No. 5, Jan. T., 1901, by plaintiffs, from decree of C. P. Blair Co., No. 323, in equity, dissolving injunction in case of William F. Gable et al. v. City of Altoona, E. F. Giles, Mayor, and J. B. W. Ickes, Controller, et al. Before McCOLLUM, C. J., MITCHELL, FELL, BROWN and POTTER, JJ. Affirmed.

Bill in equity for an injunction.

BELL, P. J., filed the following opinion:

Plaintiffs are taxpayers of the city of Altoona. Their original bill was brought to enjoin an election on the question of refunding at a lower rate of interest certain improvement bonds of the city of Altoona. This court decided said election to be null and void because of certain technical irregularities and failures to follow statutory enactments relating to the conduct of municipal elections. All parties concerned acquiesced in this ruling by this court, and the question as to the validity of said election is therefore eliminated from the present controversy. But, in accordance with the second prayer in the bill filed by plaintiffs, this court temporarily enjoined the city of Altoona from paying either the interest, or the principal, of said improvement bonds. The question now for decision is as to the continuance,

or dissolution, of said temporary injunction. Certain bondholders were permitted to intervene as defendants. Some testimony was taken to show the amount of bonds held by said intervening defendants; little other testimony was taken. The matter was, in effect, heard on bill and answer. The facts are practically undisputed, and are found as follows:

### FINDING OF FACTS.

During the years from 1890 to 1894, by virtue of various ordinances, similar in character, the city of Altoona paved certain avenues and streets. Said ordinances provided for the payment of the cost of said paving by assessments on abutting property. Warrants were to be issued from time to time as the work progressed. Bonds were then to be issued to lift said warrants in accordance with certain provisions in said ordinances, as follows:

"Section VII. At the expiration of thirty days after the completion of said work, and its approval and acceptance by the city engineer, the mayor and city treasurer shall issue to the contractor improvement bonds in the usual form for the amount of money represented by any and all warrants then in his hands, and issued pursuant to the provision of section IV of this ordinance, not exceeding, however, the amount of the assessments made under this ordinance; which bonds shall be countersigned by the city comptroller" (and after recording, etc.), "they shall be placed in the custody of the city treasurer, who shall deliver the same in exchange for and in payment of the warrants issued as aforesaid. The said bonds shall be issued in denomination of one hundred dollars and two hundred dollars and five hundred dollars, and be numbered seriatim and be made payable in the same proportions and at the same dates as provided in section III of this ordinance for the payment of the assessments therein authorized" (said section III made the assessments payable in ten equal annual instalments), "to be collected, and shall bear interest at the rate of six per centum per annum, payable semiannually, and shall express on their face that they rest for payment upon section XXVII, article XV, of the act of assembly entitled 'An act providing for the incorporation and government of cities of the third class,' approved May 23, 1889. Said bonds shall be denominated

avenue improvement bonds and shall be called in and redeemed by the city treasurer from time to time, and as often as five hundred dollars, with the accrued interest on such bonds shall accumulate in the city treasury from the assessments above mentioned. . . ."

The bonds issued pursuant to said provision in said ordinances were in the following form:

"Commonwealth of Pennsylvania.

"City of Altoona.

"——Avenue, of Street Improvement Bond——

"The city of Altoona will pay to the bearer the sum of dollars, payable on the first day of January, A. D. 1900, or sooner, at the option of said city, with interest at the rate of six per centum, clear of all taxes, payable semi-annually, on the first days of July and January in each and every year, at the treasury of said city, on presentation and surrender of the proper coupon hereto attached."

"This bond is issued by virtue of section XXVII of article XV of an act of the general assembly of the commonwealth of Pennsylvania, approved the 23d day of May, 1889, entitled an act providing for the incorporation and government of cities of the third class and of ordinances of the city of Altoona, Pa., passed in conformity therewith.

"This certificate of loan is transferable on delivery."

Frontage assessments to the amount of $273,600 were duly laid, and work to that value was done, in pursuance of said ordinances, by contractors, and bonds of the city to that amount were duly issued to such contractors. The intervening defendants, present holders of said bonds, purchased the same, either mediately or immediately, from such contractors, without any notice that the city had any defense to the payment of same, or that the same were in any respect invalid, but without making any inquiry of the city authorities. Of said issue of bonds $44,500 have been paid off by funds raised by the city from frontage assessments.

In 1895 the Supreme Court of Pennsylvania decided (see Altoona v. Bowman, 171 Pa. 307) that such frontage assessments were illegal and uncollectible because both branches of

city councils had passed the ordinances, providing for the assessment of same, on the same day.    Subsequently to said decision the city was unable to collect any further amount of said assessments.    From that time down to and including July 1, 1899, the city paid the interest of coupons on the said outstanding bonds out of the funds derived from taxation, or other means of revenue.

The city of Altoona is a passive party in this litigation.    It does not join plaintiffs in attacking the validity of said "Improvement Bonds;" it does not unite with the intervening defendant bondholders; it is neutral and submits the question of the collectibility of these bonds to the court.

### LEGAL DISCUSSION.

It would be an almost endless task to refer to, much less to attempt to analyze and reconcile, the mass of legal decisions cited by the respective counsel on questions growing out of the issuance of municipal bonds.

The contentions of counsels for plaintiffs, however, may be classified under two heads:

1. That the bonds were payable solely from assessments, and from such assessment alone can they be paid; the city has no right to pay them by revenue raised by taxation, or otherwise than by such assessments; such assessments being uncollectible, the bonds are likewise uncollectible.

2. The issue of said bonds was illegal, being in contravention of article 9, section 8, of the constitution of Pennsylvania, which provides that "the debt of any . . . . city . . . . except as herein provided, shall never exceed seven per centum upon the assessed value therein, nor shall any such municipality . . . . incur any new debt, or increase its indebtedness to an amount exceeding two per centum upon such assessed valuation of property without the assent of the electors thereof at a public election. . . . "

Let us first consider said first contention on part of plaintiffs, namely, that the only fund for the payment of said bonds was the frontage assessments.    The bonds recite that they are issued "by virtue of the 17th section of article 15," of the act of May 23, 1889.

Said section (see Pamphlet Laws, 277; Brightly's & Purdon's Digest, 1570, paragraph 214), reads as follows:

" In all contracts for improvements, the cost of which is to be paid by assessments upon the property abutting, or benefited, the city may enter into an agreement with the contractor that he shall take an assignment of such assessments in payment of the amount due him under the terms of his contract, and in such cases the city shall not be otherwise liable under such contract, whether said assessments are collectible or not; or said city may issue improvement bonds based solely upon the assessments for any of said local improvements."

Counsel for defendants contend that the holders of improvement bonds occupy more favorable vantage ground as respects the right of collection, than do the contractors specified in said section, because the phrase "whether . . . . collectible or not" is not repeated in connection with the issue of the bond provision. It is not necessary to decide said last-mentioned contention; most certainly holders of such improvement bonds do not occupy a worse position than do such contractors.

And in the Barber Asphalt Paving Co. v. Harrisburg, decided by the United States circuit court of appeals, third district, on November 13, 1894, opinion by BUTLER, J., it was expressly decided that the city of Harrisburg was liable to contractors under a state of facts very similar to those in the present controversy.

In that case, the city of Harrisburg laid a frontage assessment to pave a street; the contractor was to be paid such assessments as were received into the city treasury; then all unpaid assessments were to be assigned to said contractor, and it was expressly stipulated in the agreement that:

" It is also understood and agreed that the said company (the contractor) shall accept the said assessments in payment of the amount due it under this contract, and the city shall not be otherwise liable under this contract, whether said assessments are collectible or not."

After reciting the foregoing facts Judge BUTLER goes on to say:

" At the date of the contract, the defendant had authority to pave its streets and pay for the same from the treasury. It believed it had authority also to assess the cost of such paving on

abutting properties, and transfer the obligations thus created in payment for the work. The plaintiff had no reason to doubt the correctness of this belief. The legislature by an act of May 24, 1887, had provided for such assessments. The Supreme Court of the state, however, after the work had been completed, declared the act invalid : Harrisburg v. Shoemaker, 122 Pa. 285, and Harrisburg v. Berghaus, 122 Pa. 289, and in Ayars' Appeal, 122 Pa. 266. After entering into the contract, the defendant went through the form of making assessments ; and the property holders paid $13,470.59, before the invalidity of the statute was discovered. They refused, however, to pay more ; and the defendant denying liability for the balance due under the contract, this suit was commenced to recover it."

Judge BUTLER decides said defense to be insufficient and invalid. Referring to the assessments made by the city of Harrisburg, he says :

" Its attempt to do it failed ; its acts in this respect were a nullity. It is immaterial that the failure resulted from want of authority—as it would be if it resulted from any other cause beyond its control. It undertook, unconditionally, to make and transfer assessments, and its failure is a breach of the contract. To say its obligations are discharged by a vain attempt to make them ; that the plaintiff is bound to accept useless form of assessments is unreasonable. The parties contemplated valid charges on the property. The term assessment clearly implies this ; nothing short of a lawful assessment—one capable of enforcement, satisfies it. It was such assessments the plaintiff agreed to accept, and assumed the risk of collecting. The parties were mutually mistaken respecting the authority to pay in the special manner designated ; but this does not relieve the defendant from its obligation to pay.

If anything is wanting to render this construction clearer it may be found in the fact that the language involved is taken, word for word, from the statute, and must necessarily signify here what it does there. There, the term " assessment " signifies, and can only signify, a proceeding which creates a charge on the property specified. The statute first provides for this proceeding and charge, and then for its transfer to the contractor. It is this charge which is to be transferred, and which the contractor is to assume the risk of collecting. There is al-

ways some risk attending such collections. Prior liens, or other
causes, may render the property insufficient to pay; and this
only is the risk the statute, and the contract under it, contem-
plated.

The defendant having failed to make the required assessments
is in default, and must make reparation by paying the conse-
quent loss. There is no hardship in this, and if there was it
would afford no justification, or excuse for shifting it to the
plaintiff. The defendant has received full value for which he
is required to pay; and if the contract admitted of another
construction we would strongly incline to the one adopted, be-
cause it is not only consistent with the intention of the parties,
but avoids the great injustice of allowing the defendant to hold
and enjoy the plaintiff's property without paying for it. There
is abundant authority for this construction."

Judge BUTLER then proceeds to review and consider the le-
gal decisions bearing on the question.

Is not the present case a stronger one for the creditor than
said Harrisburg one? As has been before remarked, most cer-
tainly the bondholder, who purchased the bonds from the con-
tractor, occupies no weaker position than would such contractor,
who did the work as a consideration for said bonds. The ina-
bility to collect assessments, in the Harrisburg case, resulted
through no fault or mistake of the Harrisburg city councils;
it was the act of the Supreme Court, or rather defective legis-
lation by the state legislature, which caused the loss. But, in
this present Altoona case, the loss was occasioned by the fault,
or mistake, of the city councils of said city in passing the ordi-
nances through both branches of councils on the same day.
Should not said city, then, bear the loss caused by the mistake of
its own representatives, rather than bondholders who have paid
their money out on the faith of the validity of the bonds? To
rule otherwise would be, in effect, to permit the city to profit
by, or take advantage of, its own wrong.

Let us now consider the second contention, on behalf of
plaintiffs, namely, that the bonds are invalid because when
issued they increased the indebtedness of the city of Altoona
to an extent greater than two per centum of the assessed valu-
ation. Were it not for the recent case of Addyston Pipe &
Steel Co. v. City of Corry, hereinafter referred to, such con-

tention might at least be deemed plausible, because certain prior decisions tend to lend to it countenance. But said prior decisions seem to be distinguishable from the present case. Houston v. Lancaster, 191 Pa. 143, and Bruce v. Pittsburg, 166 Pa. 152, (cited by counsel for plaintiff) were both actions to restrain the issue of bonds; no bonds had been issued, consequently none were in the hands of purchasers for value. In Boro. of Millerstown v. Frederick, 114 Pa. 435, bonds had been issued, and were in hands of purchasers for value, but Mr. Justice CLARK bases his ruling, as to the validity of said bonds, even in the hands of such purchasers, on the fact that the certificate on file in the court of quarter sessions—by virtue of which certificate the bonds were issued—disclosed the fact that the constitutional prohibition, as to two per centum, had been disregarded. Judge CLARK says that purchasers were bound to examine such certificate, and were to be visited with notice of what it contained.

But, in the present instance, no authority was cited to the effect that purchasers of bonds were bound to search the proceedings of the city councils to ascertain that the ordinances, recited in the bond as passed in conformity with the act of assembly, were regularly and legally enacted. The contrary is held in a number of decisions; it will be sufficient to cite two of said decisions.

"A municipal corporation which, by the regularity of the execution of evidence of its debts, which is apparent upon their face, induced persons to buy them, is thereby estopped from denying their validity, or effect, on the ground that, in their execution, or in their preliminary proceedings which warranted their execution, its officers failed to comply with some law, or rule of action relative to the mere time, or manner of their procedure, but which they negligently disregarded:" Speer v. Board of County Commissioners of Kearney County (Kansas), 88 Fed. Repr. 749.

"It was held that a recital upon the face of city bonds that they were 'issued in pursuance of an act of the legislature and an ordinance of the city council passed in pursuance thereof' concludes the city as to an irregularity (consisting of the lack of a petition of freeholders to the common council to make subscription) in carrying into execution the power granted to

subscribe to the stock and issue the bonds: " Moulton v. City of Evansville, 25 Fed. Repr. 382.

But, as has heretofore been intimated, the recent case of Addyston Pipe & Steel Co. v. City of Corry, 197 Pa. 41, seems decisive in favor of the validity of the bonds now in question. Said cases seem to be on "all fours" with the present case. There, as here, the debt was contracted for municipal movements; in Corry, a sewer; in Altoona, paving streets. There provision was made for the payment of said debt by assessment on abutting property and adjacent (but not abutting) property supposed to be benefitted; here, like provision was made by assessments on abutting property; there, such provision failed because "the Supreme Court of Pennsylvania, in the case of Park Avenue Sewers, 169 Pa. 433, decided that assessments levied against property not abutting " were illegal; here a like provision for the payment of the debt by assessments failed because the city councils of Altoona passed the ordinance through both branches on the same day.

In said action, brought by the contractor to recover from the city of Corry the balance due him for his work, said city interposed the defense that no recovery could be had because the city, in incurring said debt, violated the constitutional provision as to two per centum increase and seven per centum in the aggregate. But the Supreme Court decided said defense to be unavailing, the syllabus of said case being as follows :

" Municipal Contracts—Increase of Debt.

" The validity of a municipal contract in so far as it relates to an increase of the municipal debt beyond the constitutional restriction, must be determined as of the time it was made.

" Municipalities—Increase of Debt—Current Expenditure.

" There is no constitutional restriction on municipal expenditure provided it is paid as it goes. What is prohibited is the incurring of debt. If the city has the money on hand or provides at the time a present means of raising it otherwise than by a loan, it may contract for expenditure without restriction.

" If means are adopted which in good faith according to reasonable expectation will produce a sufficient fund, the contract entered into on the faith of them should not be held unlawful

on account of unintentional miscalculation or an accidental and unexpected failure to produce the full result.

" If a city at the time of making a contract levies a special tax in good faith supposed to be adequate to meet it, but in consequence of a flood or fire, or decline in values, the result is an insufficient fund, it cannot be held that the contract, good at its inception, would thereby be made bad.

" Where a city provides that the contract price of a sewer shall be paid partly by money in the treasury, and partly by assessments on abutting and nonabutting property, and subsequently it is found that the nonabutting property is not liable to said assessments, the loss must fall upon the city, although at the time when the contract was made, the obligation of the city to pay for nonabutting properties increased the .debt beyond the constitutional limitation.

" The constitutional restriction was not intended to make municipalities dishonest nor to prevent those who contract with them from collecting their just claims, but to check rash expenditure on credit and to prevent loading the future with the results of present inconsiderate extravagance."

Mr. Justice MITCHELL, delivering the opinion of the court in said City of Corry case, says:

" . . . . There is no constitutional restriction on municipal expenditure, provided it is paid as it goes. What is prohibited is the incurring of debt. If the city has the money on hand, or provides at the time a present means of raising it otherwise than by loan, it may contract for expenditure without restriction. . . . . The constitutional restriction was not intended to make municipalities dishonest, nor to prevent those who contract with them from collecting their just claims, but to check rash expenditure on credit, and to prevent loading the future with the results of present inconsiderate extravagance.

" In the present case, the city of Corry provided the contract price of the sewer by an appropriation of money which, as already said, we must assume to have been in the treasury, and by assessments upon the property benefited. There is nothing to indicate that these assessments were not in good faith and reasonable expectation supposed to be adequate to produce the required fund and offered and accepted by the contracting parties in the mutual belief in their validity. So far as they were

upon the abutting property they fulfilled their intended purpose. The distinction in regard to nonabutting property had not been made, and was not in contemplation of either side. When it was determined that this part of the agreed means of payment would be unavailing, the loss should in equity and justice fall on the city which received the full consideration stipulated for, and to this extent paid nothing.

" The cases on this subject are conflicting. See Dillon on Municipal Corporations (4th ed.), secs. 480–482 and notes. They show that there is no disposition of the question which is wholly free from difficulty. We have preferred to follow the line which we think not inferior in just legal reasoning, while clearly superior in the honesty and justice of the result reached."

Applying the language of Mr. Justice MITCHELL to the facts of the present case, it may well be said that " there is nothing to indicate that these " street paving frontage " assessments were not in good faith and reasonable expectation supposed to be adequate to produce the required fund; " " the agreed means of payment " proved " unavailing " by reason of the wrong-doing, or negligence of the city councils of Altoona in both branches of same, passing the ordinances on the same day; " the loss should in equity and justice fall on the city (of Altoona) which has received the full consideration stipulated for," rather than on the bondholders who paid their money to the contractors for the bonds given to said contractors as consideration for paving and work done.

It is deemed unnecessary to refer to the decisions cited by defendants' counsel on the question as to whether payment of interest for years estops the city of Altoona from now contesting the validity of said bonds. Such payment of interest is persuasive of such validity; whether in itself, it is conclusive, it is unnecessary to decide.

### LEGAL CONCLUSIONS.

Following the decision of Judge BUTLER, in the case of Barber Asphalt Paving Co. v. City of Harrisburg, hereinbefore referred to, and on authority of Addyston Pipe & Steel Co. v. City of Corry, 197 Pa. 41, it is hereby decided that the im-

provement bonds of the city of Altoona, in question in this action, are valid and collectible, debt and interest.

### DECREE.

Now, November 26, 1900, after due consideration, it is hereby ordered, adjudged and decreed that the injunction, heretofore granted November 10, 1899, in so far as it restrains the city of Altoona, or its officials, from paying either the interest or principal of certain improvement bonds in question in this action, be, and the same is hereby dissolved ; plaintiffs to pay the record costs and their own costs ; defendants to file bill for printing or witnesses.

*Error assigned* was decree of the court.

*E. H. Flick*, with him *M. M. McNeil*, for appellants.—All persons contracting with a municipal corporation must at their peril inquire into the power of the corporation or its officers to make the contract ; all contracts beyond the scope of corporate powers are void: Nankivil v. Yeosock, 7 Kulp, 518 ; Borough of Millertown v. Frederick, 114 Pa. 435 ; Ross v. Phila., 115 Pa. 222 ; Spofford v. Phila., 43 Leg Int. 184 ; City of Erie v. Moody, 176 Pa. 478 ; Pittsburg v. Walter, 69 Pa. 365 ; Parker v. Phila., 92 Pa. 401 ; Gamble v. Phila., 37 Leg. Int. 377 ; Com. v. Morrow, 40 Pitts. Legal Jour. 287 ; Horter v. Phila., 15 Phila. 94 ; Philadelphia v. Jewell, 135 Pa. 329.

We contend that a city cannot legally incur an indebtedness, since 1874, exceeding two per cent of its last valuation, without the consent of its inhabitants, and that a bond executed by the city, to bind such debt, is not binding upon the people of the city: Appeal of City of Wilkes-Barre, 109 Pa. 554 ; Pepper v. Philadelphia, 181 Pa. 566 ; Houston v. Lancaster, 191 Pa. 143 ; Appeal of City of Erie, 91 Pa. 398.

*Thomas H. Greevy*, with him *Charles A. Fagan, F. H. Guffey* and *J. M. Stoner*, for appellees.—In view of the fact that the city had ample statutory authority for issuing the bonds in question, the fact that the ordinance passed in pursuance of the statute and authorizing the bond issue, were subsequently declared invalid in consequence of irregularities in its passage, is

not a bar to a recovery on the bonds by bona fide holders : Moulton v. City of Evansville, 25 Fed. Repr. 382 ; Oregon v. Jennings, 119 U. S. 74 ; Ins. Co. v. Bruce, 105 U. S. 328 ; Johnson County v. January, 94 U. S. 202 ; Anderson County Commissioners v. Beal, 113 U. S. 237 ; School District v. Stone, 106 U. S. 185 ; Tiedeman on Municipal Corporations, sec. 196 ; Com. v. Select and Common Councils of Pittsburg, 34 Pa. 518.

The payment of nine years' interest on the bonds estops the city, consequently its citizens, from questioning their validity : Brown v. Ingalls Twp., 81 Fed. Repr. 485 ; Loan Assn. v. Topeka, 20 Wall. 655 ; Dudley v. Board of Commissioners of Lake County, 80 Fed. Repr. 672 ; Heed v. Commissioners of Cowley County, 82 Fed. Repr. 716.

The bonds in question impose an absolute obligation upon the city, and the city is liable for their payment, irrespective of whether it did or did not succeed in collecting the assessments : Com. v. Select and Common Councils of Pittsburg, 88 Pa. 66 ; Commercial Nat. Bank v. Portland, 24 Oregon, 188 ; Barber Asphalt Paving Co. v. Harrisburg, 64 Fed. Repr. 283.

PER CURIAM, June 4, 1901 :

The decree entered in this case is affirmed on the able and satisfactory opinion of Judge BELL.