(101 South. 451)

## TOWN OF CAPITOL HEIGHTS v. STEINER. (3 Div. 673.)

(Supreme Court of Alabama. June 26, 1924. Rehearing Denied Oct. 16, 1924.)

Municipal corporations ⬷950 — Bondholder held not to have action against city for failure to levy sufficient assessment to pay bonds.

In view of Const. 1901, § 225, limiting city's indebtedness, holder of bonds, issued under Code 1907, § 1411, for public improvements, providing for lien only against property improved or against fund collected from assessment levied, has no action against city for failure to levy sufficient assessment to pay bonds.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Action for damages by L. Steiner against the Town of Capitol Heights. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Steiner, Crum & Weil, of Montgomery, for appellant.

---

⬷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] 210 Ala. 529.

There is no liability upon the municipality on the bonds. Code 1907, § 1411; 2 Dillon, Mun. Corp. § 827; Henderson v. Enterprise, 202 Ala. 277, 80 South. 115.

Sternfeld & Lobman and James J. Mayfield, all of Montgomery, for appellee.

A municipal corporation is liable in an action on the case for negligence of its officials in making an adequate assessment to pay interest and principal of improvement bonds to be paid out of a particular fund. Dillon, Mun. Corp., §§ 827, 893; McQuillin, §§ 2269, 1948; Oklahoma City v. Orthwein, 258 Fed. 190, 169 C. C. A. 258; Barber Asphalt Co. v. Denver, 72 Fed. 336, 19 C. C. A. 139; Nolan v. Reading, 235 Pa. 367, 84 Atl. 390; Morris v. Sheridan, 86 Or. 224, 167 Pac. 593; Dennis v. Willamina, 80 Or. 486, 157 Pac. 799; O'Neil v. Portland, 59 Or. 84, 113 Pac. 655; Comm. Nat. Bank v. Oregon, 24 Or. 188, 33 Pac. 532, 41 Am. St. Rep. 854; Ft. Dodge Co. v. Ft. Dodge, 115 Iowa, 568, 89 N. W. 7; Slegel v. Lauer, 148 Pa. 236, 23 Atl. 996, 15 L. R. A. 547; Reilly v. Albany, 112 N. Y. 30, 19 N. E. 508.

THOMAS, J. The town of Capitol Heights issued certain paving assessment bonds bearing date July 1, 1913, payable July 1, 1923, with semiannual interest coupons attached, pursuant to the provisions of section 1411 of the Code. The plaintiff was the purchaser and holder of some of these bonds on which the interest was regularly paid; however, the assessments collected were insufficient to pay the principal in full at maturity. This was due to a failure of the then city officials to make an assessment sufficient in amount to pay the principal in full at maturity.

The plaintiff brought suit against the town, alleging the negligent failure of its officers to make a sufficient assessment with which to discharge the obligation. The demurrer to the several counts of the complaint having been overruled, defendant pleaded, in short, by consent the general issue, and any matter that might be specially pleaded. The trial was upon an agreed statement of facts, by the court without the intervention of a jury.

The question presented has never been decided in this state. The amendatory act of 1920 (Gen. & Loc. Acts Sp. Sess. p. 155) has no application to the contract, or to the alleged breach of duty as to such contract sought to be made the basis of the instant suit.

The bonds were issued pursuant to section 1411 of the Code of 1907, Capitol Heights being at the time of that issue within the class covered by the statute authorizing any city having a population of less than 6,000 to issue bonds for certain public improvements, and expressly stipulating that the same should be a lien or charge only against the property improved and against the fund col-

211 ALA.—41

lected from the assessment levied against the property improved, and should not be the general obligation of the city or town, nor should such city or town be in any way liable to the holders of such bonds in case of failure to collect the same. This section further provides that the bonds when issued shall convey and transfer to the owners thereof all right, title, and interest in and to the assessment, and the lien upon the respective lots or parcels of grounds therein provided for, which liens and assessments shall stand as security for such bonds and coupons until they are paid, with full power in the holder of such bonds or coupons to enforce the collection thereof by foreclosure in any court of competent jurisdiction.

The bonds recite that they are issued pursuant to the provisions of said statute and for the purpose of paving streets, and they were secured by a lien only against the property improved and against the funds collected from the assessments levied against the property improved, and that it was payable solely from the said assessments.

It is conceded that there is no liability upon the municipality on the bonds as such. The contention of appellee, however, is that in its corporate capacity the town of Capitol Heights is liable for the negligent failure of its board of aldermen or officers authorized and required to make and levy an assessment pursuant to the ordinance; the alleged negligent failure being to make a sufficient assessment with which to pay the bonds with interest at maturity. Appellant's counsel insist that in the light of the stringent provisions of section 1411 of the Code, it was the evident purpose of the Legislature to prevent a general liability against the town, directly or indirectly, and that a judgment against the town for the alleged negligent failure of the officers of the town to make an adequate assessment would indirectly carry a general obligation against the town upon or for the issuance of the bonds in question. The facts relating to the making of the levy and the assessment on the abutting properties and entering into the sufficiency or insufficiency of the assessment were matters of public record preliminary to and preceding the issuance of the bonds, and were as fully open to the inspection and investigation of the purchaser of the bonds as to the then officials of that municipality. Under the rules obtaining in the premises, as matter of law the purchasers were cognizant of these preliminary steps and of the extent of the failure of the levy of a sufficient assessment, before the bonds were purchased.

The discussion in Henderson v. City of Enterprise, 202 Ala. 277, 80 South. 115, is to this effect:

"As, under Code 1907, § 1411, bonds of a city of less than 6,000 inhabitants, issued for the payment of improvements, do not become the general obligations of the city, but are a

lien only against the property benefited, enforcement of an ordinance providing for paving in such a city will not be enjoined, on the ground the city was already indebted beyond the legal limits, and such bonds would increase the indebtedness; it being wholly speculative whether the city would attempt to pledge its credit for the paving."

It is not decisive of the instant question.

We may observe that no attempt is being made to enforce the payment by the municipality of the bonds in an action ex contractu: nor is it sought to hold the municipality responsible for a failure of its officials to collect the assessments and pay over the assessments collected. It is an action in case (ex delicto [Sloss-Sheffield S. & I. Co. v. Greek (Ala. Sup.) 99 South. 791 [1]) for the failure of the former officials of the municipality to levy a sufficient assessment to pay principal and interest on the bonds.

Mr. Dillon, in his Municipal Corporations, vol. 2 (5th Ed.) pp. 1250–1253, § 827, collects the authorities to his text treating the liability of the city to a contractor, saying:

"When the *charter* or *statute* authorizing the improvement, or an *express stipulation in the contract, provides* that the *contractor shall be remunerated from the proceeds of an assessment* on the property benefited and shall look only to the assessment as the source for payment, or when the *city charter provides* no other means to pay the contractor than the proceeds of the assessment *as it is collected*, there is *no liability on the city to the contractor* other than to make and collect the assessment and pay it over, *unless the city fails in some duty* it owes to the contractor connected with the levy and collection of the assessment. Upon the *receipt* of the assessment the city becomes liable to the contractor as for money received to his use. But where the contract price is payable from assessments, the courts having regard to *the duty of the municipality* to cause the assessment to be made and collected in a proper manner and without unreasonable delay after the work is done, have laid down the principle that the *municipality is answerable* in damages to the contractor *for a breach of its duty* in this respect, and in many cases have held that the failure of the municipality to discharge its duty by making the necessary assessment, or by its unreasonable delay in collecting and paying over the money, constitutes a breach of the contract or a liability *ex delicto,* giving to the contractor a right to recover his compensation or damages against the municipality generally.

"But some cases have denied or qualified this doctrine so far as to hold that there is no general liability upon the city, so long, at least, as it remains within the power of the city to collect the assessment, and that a general liability does not attach if the city is proceeding in good faith without unreasonable delay to make a new assessment; or if it has not had a reasonable opportunity to correct defects in the original assessment by reassessing the property benefited; and the right to a general recovery

against the city has been denied to the contractor in some instances so long as any method remained of levying and collecting an assessment on the property benefited."

The case from the Supreme Court of the United States that is cited by the author is Memphis v. Brown, 20 Wall. 289, 22 L. Ed. 264, where the contract guaranteed to the contractor the "payment of said accounts as so assessed against the property owner." The same case is reported in 97 U. S. 300, 24 L. Ed. 924.

The Illinois court holds that the power to contract for a public improvement gives the city, by implication, power to stipulate in the contract that the contractor shall look only to the proceeds of an assessment for his compensation, and thereby protect its general fund. Village of Park Ridge v. Robinson, 198 Ill. 571, 65 N. E. 104, 92 Am. St. Rep. 276.

It has been held by the New York court that when the charter provides no other means of payment than a special assessment for the costs of the improvement, a person contracting with the city to do such improvement is chargeable with notice of such limitations or provisions and is held to have contracted with reference to the only source of payment provided by law. Baker v. City of Utica, 19 N. Y. 326, 328.

Mr. Dillon, in his Municipal Corporations, vol. 2 (5th Ed.) pp. 1388, 1390, § 893, in the chapter on "Improvement Bonds Payable from Assessment Only," says:

"Although such obligations do not constitute debt of the municipality in the constitutional sense of the word, or an obligation which is payable from its general funds, yet bonds which are issued in the name of the municipality, to be paid only from a special fund created by the enabling act and so limited on the face of the obligation, are the bonds of the municipality. The municipality is the obligor in the bond, must fulfill the obligations imposed upon it, and is subject to appropriate actions in respect thereof, notwithstanding the fact that it is not under any general liability, or, so to speak, liability in personam, for the debt. * * * If the bonds express upon their face that they are issued pursuant to statute and are payable by virtue thereof only from the proceeds of the special fund created by an assessment or otherwise, there is no liability upon the city to pay the bonds out of its general funds or by virtue of its general power of taxation. * * * If there is no declaration in the bonds to the effect that they are payable only out of the particular fund, the general liability of the city is not limited thereby."

The case of United States v. Ft. Scott, 99 U. S. 152, 25 L. Ed. 352, cited by Mr. Dillon, proceeded under the general authority of the city to contract for the improvements and the failure of the bond to recite that the purchaser had no security beyond the assessment upon the particular property.

The general statement is that the usual remedies are (1) to enforce the duty of the

---

[1] Ante, p. 95.

municipality to provide the special fund for the payment of the bonds, "doubtless to be found in mandamus", or (2) to proceed for an accounting for the money which has been received from the assessments and which has gone into the general fund of the municipality; or (3) "by action against the city for the amount owing on the bonds for damages, in event that the city has *clearly neglected its duty in not taking steps to perfect the assessment in consequence whereof the assessment cannot be enforced.*" Dillon's Municipal Corp. vol. 2 (5th Ed) p. 1395, § 892. (Italics supplied.)

The authorities cited to sustain the last statement of liability are Deposit & Discount Bank v Scranton, 208 Pa. 383, 57 Atl. 770, which was based on gross negligence of the city in filing the liens, failure to issue scire facias upon the liens, and loss of assessments; O'Hara v Scranton, 205 Pa. 142, 54 Atl. 713, where the city alone had power to create, secure, and collect, and bound itself to the exercise of that power and to use these means; and such were the law and facts in Cable v. Altoona, 200 Pa. 15, 49 Atl. 367.

The method of procedure given in some states to the holder of the improvement bond is to begin a direct action against the owner of the property to foreclose the lien of the assessment on the property—and such are provisions of the Alabama statute. Section 1411 of the Code of 1907. However, there was no failure to levy an assessment before the bonds were sold or declination to make a sufficient levy on timely application, or to collect and account as trustees for the same as levied and collected.

It may not be necessary to discuss general authorities. However, the case of Oklahoma City v Orthwein, 258 Fed. 190, 169 C. C. A. 258, is not an apt authority. The fact is that section 728, Comp. Laws of Oklahoma 1909, gave the municipality the power to levy new assessments where the original was invalid; there was a written request to act to the end of · new and sufficient assessments, and a failure by the municipality to grant the same and discharge its statutory power.

In Nolan v. Reading City, 235 Pa. 368, 84 Atl. 390, the bond issued contained statements that it was secured solely by the assessments "levied under a specified ordinance, that the city was only to be liable for the amount collected on such assessments," *and that the requirements of the ordinance and laws had been complied with;* held, a negligent failure on the part of the city to make an adequate assessment rendered the city liable. There was no statute to be read into the bond forbidding the imposition of the general liability that was imposed upon the city of Reading by reason of the express stipulation in the bond *"that the requirements of the ordinance had been fully complied with."* (Italics supplied.)

The case of Barber Asphalt Pav. Co. v.

City of Denver, 72 Fed. 336, 340, 344, 19 C. C. A. 139, 142, collects the general authorities to the proposition that—

"If a municipal corporation which has the power to make a contract for street improvements contracts for them, and stipulates in the contract that the agreed price of the improvements shall be paid to the contractor out of funds to be realized by assessments upon abutting property, and the city has power to make the assessments, but fails to do so, or fails to make valid assessments, and thereby to provide the fund out of which the contractor may receive the price of his labor and materials, the city is primarily and absolutely liable to pay the contract price itself. * * * In cases of this character the city becomes primarily liable, even when the contract expressly provides that the contractor shall accept the assessments in payment of the contract price, and that the city shall not be otherwise liable, whether the assessments are collectible or not."

Judge Sanborn further says:

"The charter of the city of Denver did not prohibit its officers from making the contract here in question until after a definite amount of money had been appropriated to discharge the liability so incurred," and that the proviso to section 8 of the act to amend the charter of the city of Denver (1892), referred to in the opinion with section 7 thereof, did not prevent the liability to pay the contract price of the improvements if it had no power to make the assessment on abutting property, or if it failed to make the assessments, or if the assessments attempted to be made "are void."

Section 7 of the Denver charter or act amendatory thereof "prescribed the method, and gave to the board of public works and to the city council the power, to raise and expend $400,000 to grade, pave, and curb streets, to construct sewers, to erect public buildings, to purchase and improve parks, to build viaducts, and to make other original improvements, which were not to be paid for by the general tax levy for the coming year."

Barber Asphalt Pav. Co. v. City of Denver, supra, does not govern the instant case, as we are charged with the duty of construction of the Alabama statute, section 1411 of the Code of 1907, in the light of the evils sought to be prevented by section 225 of the Constitution and by this statute.

The Oregon cases are Morris v. Sheridan, 86 Or. 224, 234, 167 Pac. 593; Dennis v. Willamina, 80 Or. 486, 157 Pac. 799; O'Neil v. City of Portland, 59 Or. 84, 113 Pac. 655; Comm. Nat. Bk. v. Oregon, 24 Or. 188, 33 Pac. 532, 41 Am. St. Rep. 854, and are to the effect that—

"When the city orders a local improvement, the duty devolves upon it to put the necessary machinery in motion to raise the funds to pay for it by assessment upon the property benefited; and a failure to perform this duty creates a general liability and gives rise to a right of action ex delicto against the municipality for damages."

A consideration of one of these cases will be sufficient. The deficiency occurring in Morris v. Sheridan, 86 Or. 224, 235, 236, 167 Pac. 593, was by reason of sales of default property for less than the amount of the assessments charged against the same; held, the city (1) was not liable for the difference between the special assessments levied and the sum received and accounted for from such sales, and (2) was liable in damages for the payment in full from the fund of certain contractors' warrants which were subsequent in order of payment to those of the plaintiff.

The right sought to be enforced in Reilly v. City of Albany, 112 N. Y. 30, 42, 19 N. E. 508, 510 was by a contractor for street improvements, and the. declaration is there made:

"When the contractor had performed his work according to his contract he had no duty remaining to discharge, and then had a right to rely upon the implied obligation of the city to use with due diligence its own agencies in procuring the means to satisfy his claims. It could not have been supposed that he was not only to earn his compensation, but also to set in motion and keep in operation the several agencies of the city government, over whom he had no control, to place in the hands of the city the funds necessary to enable it to pay its obligations. That was a power lodged in the hands of the city, and the clear intent of the contract was that it should exercise it diligently for the purpose of raising the funds necessary to pay for the improvement. For an omission to do so it would become liable to pay such damages as the contractor might suffer by reason of its neglect of duty."

The foregoing illustrate that the authorities are conflicting: That each case must be decided under the limitations of constitutional, legislative, and municipal powers. These limitations are deducible from all the applicable legislative provisions, and from the contract provisions of the parties given expression in the ordinance and the bond. A decision of the instant question must be within the limitations of the Constitution (if any are applicable [Const. § 225]), the statute entering into the bond and the consideration for its sale (Code, § 1411), the terms of the paving or improvement ordinance authorizing the bond issue, and the specific terms contained in the bond sued upon.

The Constitution provides a general debt limit and exceptions thereto for specified public improvements by a municipality. Const. § 225; Town of Camden v. Fairbanks, 204 Ala. 112, 86 South. 8. The provisions of Code, § 1411, were enacted with express reference thereto, and to prevent the municipal ills sought to be guarded against. Though the constitutional debt limit was against the "becoming indebted," etc., by the municipality other than as authorized (Ward v. McDonald, 201 Ala. 237, 77 South. 827; Austin v. Snodgrass, 209 Ala. 353, 96 South. 139), it has no application to municipal liability

that is ex delicto. See Ft. Dodge E. L. & P. Co. v. City of Ft. Dodge, 115 Iowa, 568, 579, 580, 89 N. W. 7. However, the statute is broad and explicit and not limited to such liability as is only ex contractu.

The result we have reached is not to be affected by reason of the fact that the right to levy a reassessment is not inherent in the municipality; or that the authority for the exercise of such power or action (of reassessment) must be found in express statute (Page & Jones on Taxation by Assessment, § 958); or that the exercise of the power, of making the assessment exhausted that power (People ex rel. Williams v. Haines, 49 N. Y. 587; 2 Page & Jones on Taxation by Assessment, p. 1618, § 958).

In McQuillin's Municipal Corp. vol. 4, p. 4192, § 1948, it is declared that if the "assessment is insufficient to meet the cost of the improvement it is generally held that the municipality is not liable for the deficiency." New Albany v. Sweeney, 13 Ind. 245; Creighton v. Toledo, 18 Ohio St. 447. However, that author says that a failure on the part of the municipality to levy a sufficient assessment to pay for an improvement as required by the charter, renders the city liable to the contractor for damages. The concluding observation of the author is:

"However, much depends * * * upon the provisions of the charter, statute or ordinance under which the work is done."

He collects authorities to the effect that where the ordinance for a municipal improvement provided that the city should not be liable therefor, the city was held not liable, though special assessments failed to discharge the debt. Union Trust Co. v. State, 154 Cal. 716, 99 Pac. 183, 24 L. R. A. (N. S.) 1111; Frank v. State, 154 Cal. 730, 99 Pac. 189.

In volume 5, pp. 4794, 4795, § 2260, Mr. McQuillin concludes his discussion of the liability vel non of the municipality for improvement bonds, saying that in any event the municipality is liable as a trustee for failure to collect and apply the assessment, but that "it is not liable simply because of the return of special assessments as delinquent."

In this state there is no statute authorizing a reassessment for the purpose of meeting the deficiency created by the insufficient levy made and on which the bonds were predicated and sold. Here the ordinance and the terms of the bond are in the language of the statute, expressly stipulating that the purchaser of the bond must look alone for payment to the proceeds of the special assessment that was or had been levied for the specific purpose. The right of procedure to foreclose the lien was given the bondholder against the abutting property on which the lien had attached by the assessment and under the statute. In such a case the method of

payment is exclusive, and the city is not liable for the deficiency. Chicago v. People, 48 Ill. 416; Richardson v. Brooklyn, 34 Barb. (N. Y.) 569; Flemming v. Hoboken, 40 N. J. Law, 270.

That the municipality of Capitol Heights in good faith levied, collected, and disbursed the proceeds in accordance with the law is shown by the agreed statement of facts; and it now has no authority of law to make a re-assessment for the deficiency. It follows that the statute having application to such contract denies the right of recovery in an action ex contractu or ex delicto. If this be not the will of the Legislature—that directly or indirectly such liability cannot be visited upon the town or city—it would be an easy method of imposing liability for or by way of such improvements, which it is the manifest policy of the Legislature to prohibit. Any other construction of the statute would sanction, if not authorize, the strangulation of municipalities for improvements, notwithstanding the effort by Constitution and statute to prevent such result.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.

