152 So. 901

**In re OPINIONS OF THE JUSTICES.**

No. 30.

Supreme Court of Alabama.

Feb. 19, 1934.

William H. Mitchell, of Florence, for City of Florence.

Miller, Graham & Wingo and John S. Foster, all of Birmingham for City of Tarrant City.

William Stell, of Russellville, for City of Russellville.

William B. White, S. M. Bronaugh, and Bradley, Baldwin, All & White, all of Birmingham, and Rushton, Crenshaw & Rushton, of Montgomery, opposed.

February 14, 1934.

To the Justices of the Supreme Court of Alabama,

Gentlemen:

Under section 10290 of the Code of Alabama, I hereby request an opinion of the Justices of the Supreme Court on the important constitutional questions hereinbelow set out.

On April 6, 1933, an act of the Legislature known as House Bill No. 231 was approved. The act is: "An Act to authorize counties, municipal corporations, and cities within this State to acquire by purchase, construction, condemnation and/or otherwise electric light plants, power plants, power lines, transmission lines and power distributing systems and to maintain, improve, extend and operate public utilities and to borrow money for said purposes and to provide for the securing and repayment of such money with interest."

The act is found in General and Local Acts Alabama, Extra Session 1933, at page 100.

In requesting the opinion this act will be referred to as "the act."

1. Did the act become a law of the state of Alabama in conformity with the requirements of sections 63 and 76 of the Constitution of the State of Alabama, in the light of the facts disclosed by the journal entries pertaining to the passage of said bill in the Extraordinary Session of the Legislature of Alabama of 1933, said facts being more particularly as follows:

(a) The subject of said bill was not designated in the proclamation of the Governor calling such session.

(b) At the session of the Senate on March 30, 1933, at which said bill received its third reading and was voted upon for final passage, 34 members of said Senate were present and answered roll call.

(c) After the third and final reading of said bill before the Senate on the 30th day of March, 1933, said bill received 22 yea votes, 11 nay votes, and one member announced that he and an absent member were paired on said vote; that he would vote "no" and such absent member, if present, would vote "aye."

2. Does the title to the act contain more than one subject and, if not, is the title to said act broad enough to express the subject of said act set forth in sections 3 and 5 thereof, all as required by section 45 of the Constitution of the State of Alabama?

3. A substitute to the act as originally introduced was proposed and adopted in the House of Representatives. This substitute was amended and the substitute, as amended, was finally adopted.

Was the substitute, as amended, adopted in conformity to the requirements of section 64 of the Constitution of the State of Alabama, in the light of the facts disclosed by the journal entries pertaining to the passage of said bill in the Extraordinary Session of the Legislature of Alabama of 1933, said facts being more particularly as follows:

(a) A substitute to House Bill 231 was reported by the Standing Committee on Civil Laws. "Mr. Norman offered the following amendment to the substitute reported by the Standing Committee on Civil Laws for House Bill 231 * * * and the amendment offered by Mr. Norman was adopted."

(b) "Mr. Miller offered the following amendment to the substitute reported by the Standing Committee on Civil Laws for House Bill 231 * * * and the amendment by Mr. Miller to the substitute to House Bill 231 was adopted."

(c) "And the substitute for House Bill 231 reported by the Standing Committee on Civil Laws as amended was adopted. Yeas 63, Nays 25." (And the yeas and nays are set out in the journal.)

A copy of the journal with reference to the said act is hereto attached.

Please advise as follows:

Was the substitute bill, as amended, adopted in conformity to the requirements of section 64 of the Constitution of the State of Alabama, in the light of the facts disclosed by the journal?

Was the act as passed and approved, adopted in conformity to the requirements of section 64 of the Constitution of Alabama?

4. Does the exercise of the powers granted by the act pursuant to which any city borrowing money thereunder may pledge, create a lien upon and mortgage the property constructed with the proceeds of said borrowing, and in addition and for the further security of the lenders of said money bind itself for the proper application of money properly borrowed from such lenders and create a lien upon all or any part of the revenue derived from the operation of such property so acquired, constitute the instruments authorized by section 5 of the act "bonds" of such city within the meaning of section 222 of the Constitution of the State of Alabama and an "indebtedness" of such city within the meaning of the provision of section 225 of the Constitution?

It is assumed that the city issuing its securities has attained its constitutional debt limit and that the city has no existing electric light or power system.

Transcripts of the House Journal and of the Senate Journal on this act are hereto attached for your information.

This opinion is being requested because a number of cities and towns in the state have applied for loans from the Public Works Administration of the Federal Government under the authority given by this act, and the Attorney for the Public Works Administration has raised the questions here submitted to you and each interested municipality is anxious to have a decision on the subject as soon as possible in order that they may proceed with their loan if the act is constitutional. The officials of the cities feel that this is very important.

Yours very truly,     B. M. Miller,
BMM:T                     Governor.

Response of the Justices.

To His Excellency, Hon. B. M. Miller,
    Governor of Alabama,
        Montgomery.
Dear Sir:

Replying to yours of February 14, 1934, asking for our opinion under section 10290 of the Code, wherein you ask of an act, a copy thereto attached, approved April 6, 1933:

First: Did "the act become a law of the state of Alabama in conformity with the requirements of sections 63 and 76 of the Constitution of the State of Alabama, in the light of the facts disclosed by the journal entries pertaining to the passage of said bill in the Extraordinary Session of the Legislature of Alabama of 1933, said facts being more particularly as follows:

"(a) The subject of said bill was not designated in the proclamation of the Governor calling such session.

"(b) At the session of the Senate on March 30, 1933, at which said bill received its third reading and was voted upon for final passage, 34 members of said Senate were present and answered roll call.

"(c) After the third and final reading of said bill before the Senate on the 30th day of March, 1933, said bill received 22 yea votes, 11 nay votes, and one member announced that he and an absent member were paired on said vote; that he would vote 'no' and such absent member, if present, would vote 'aye.'

"2. Does the title to the act contain more than one subject and, if not, is the title to said act broad enough to express the subject of said act set forth in sections 3 and 5 thereof, all as required by section 45 of the Constitution of the State of Alabama?

"3. A substitute to the act as originally introduced was proposed and adopted in the House of Representatives. This substitute was amended and the substitute, as amended, was finally adopted.

"Was the substitute, as amended, adopted in conformity to the requirements of section 64 of the Constitution of the State of Alabama, in the light of the facts disclosed by the journal entries pertaining to the passage of said bill in the Extraordinary Session of the Legislature of Alabama of 1933, said facts being more particularly as follows:

"(a) A substitute to House Bill 231 was reported by the Standing Committee on Civil Laws. 'Mr. Norman offered the following amendment to the substitute reported by the Standing Committee on Civil Laws for House Bill 231 * * * and the amendment offered by Mr. Norman was adopted.'

"(b) 'Mr. Miller offered the following amendment to the substitute reported by the Standing Committee on Civil Laws for House Bill 231 * * * and the amendment by Mr. Miller to the Substitute to House Bill 231 was adopted.'

"(c) 'And the substitute for House Bill 231 reported by the Standing Committee on Civil Laws as amended was adopted. Yeas 63, Nays 25.' (And the yeas and nays are set out in the Journal.)

"Was the substitute bill, as amended, adopted in conformity to the requirements of section 64 of the Constitution of the State of Alabama, in the light of the facts disclosed by the journal?

"Was the act as passed and approved, adopted in conformity to the requirements of section 64 of the Constitution of Alabama?

"4. Does the exercise of the powers granted by the act pursuant to which any city borrowing money thereunder may pledge, create a lien upon and mortgage the property constructed with the proceeds of said borrowing, and in addition and for the further security of the lenders of said money bind itself for the proper application of money properly borrowed from such lenders and create a lien upon all or any part of the revenue derived from the operation of such property so acquired, constitute the instruments authorized by section 5 of the act 'Bonds' of such city within the meaning of section 222 of the Constitution of the State of Alabama and an 'indebtedness' of such city within the meaning of the provision of section 225 of the Constitution?

"It is assumed that the city issuing its securities has attained its constitutional debt limit and that the city has no existing electric light or power system."

■ Answering your first above-stated inquiry, involving sections 76 and 63 of the Constitution, advise that the House Journal discloses that the requirements of sections 76 and 63 of the Constitution were fully observed in the passage of the bill, which became the act in question.

And with reference to the passage of the act in the Senate, we are of the opinion the Senator who was present but who agreed with one who was absent to pair their votes on the question should be treated as not a participant in that proceeding. The effect of his "pair" is that for that occasion he is absent. May's Treatise on Parliament, p. 221. Section 52 of the Constitution provides that a majority of each house constitutes a quorum. Section 76 provides that at a special session of the Legislature there shall be no legislation upon a subject not designated by the Governor in the call "except by a vote of two-thirds of each house." Each house here has been held by this court to mean a quorum defined in section 52. State v. Skeggs, 154 Ala. 249, 46 So. 268; Farmers' Union Warehouse v. McIntosh, 1 Ala. App. 407, 56 So. 102.

■ This act not being in the call needs the vote of two-thirds of "each house." It did not receive that vote, if the senator who was shown by the journal to be present, but who was paired with an absent Senator, should be counted as a member of the "house" in the transaction of that business, as contemplated by section 76, Constitution. The Constitution does not prescribe a rule in that respect. But "each house shall have power to determine the rules of its proceedings." Section 53, Constitution. So that each house has the power to adopt some uniform method within proper limits of determining the question of whether a member present, as shown

by the journal, but not voting, should be counted to determine the presence of a quorum. United States v. Ballin, 144 U. S. 1, 12 S. Ct. 507, 509, 36 L. Ed. 321.

Reference is made in that case to the uniform rule that "when a quorum is present, the act of a majority of the quorum is the act of the body."

The opinion quotes from 1 Dillon on Municipal Corporations (4th Ed.) § 283, in part that, "a major part of the whole is necessary to constitute a quorum, and *a majority of the quorum may act.* If the major part withdraw so as to leave no quorum, the power of the minority to act is, in general, considered to cease." It also quotes from many other authorities to the same effect. See 46 Corpus Juris, 1381.

We think that the rule applicable to legislative bodies is clearly made to appear in that opinion, that the act must be done by a majority of a quorum of the house. That is, of course, unless a larger proportion of the quorum is necessary. If those who vote are sufficient in number to show that a majority constituting a quorum so acted, then we think that in the absence of a rule of the house to the contrary, those who thus voted only should be counted as constituting the house, and that they are the house for the purpose of that vote.

This practice was probably observed by Congress before the house adopted rule 15 dealt with in United States v. Ballin, supra, and was probably the occasion for it. Under that rule (15) the house is made up of those present as shown by the journal, though all are not participating. A majority to pass a measure must be of those thus shown whether voting or not. Without that rule, the "house" was made up of those voting, but it was no "house" unless a majority of the membership so participated. Under that practice, a quorum could be broken by a sufficient number refusing to vote, thereby effectually blocking the legislation for the time.

Such being our understanding of the principle here applying, it appears that the bill referred to in the inquiry was passed by two-thirds of those voting, and that those who voted were a majority of the membership constituting a quorum, or a "house" mentioned in section 76, Constitution. Its adoption therefore was not in violation of that provision of the Constitution.

It would appear from the journals of the two houses, therefore, that the act now before us became a law in conformity to the requirements of sections 63 and 76 of the Constitution.

Answering your second inquiry above, we are of the opinion the act in no wise offends section 45 of the Constitution of the state. And we are also of the opinion that the title of the act is sufficiently broad to cover the subject of the act set forth in sections 3 and 5 thereof.

Answering your third inquiry: "Was the substitute, as amended, adopted in conformity to the requirements of section 64 of the Constitution of the State of Alabama, in the light of the facts disclosed by the journal entries pertaining to the passage of said bill * * *?"

Assuming that your inquiry correctly states the facts with reference to the adoption of the substitute, and assuming the further fact, which we have found to be a fact, by reference to the House Journal itself, page 1016, that the bill (House Bill 231), as amended by the substitute reported by the Standing Committee on Civil Laws, as amended, was read a third time at length and passed by an aye and nay vote of two-thirds of the House (the vote shown was 63 ayes and 25 nays), we answer: It affirmatively appears from the Journal of the House that substitute reported by the committee for the bill (which was but an amendment to the bill) after having been amended in two particulars was put upon its passage, and was adopted by an aye and nay vote (63 ayes and 25 nays). It appears that the substitute, with the names of those voting for and against the substitute, was entered at length on the House Journal. Thus it appears affirmatively from the journal that the committee substitute, as amended (Norman and Miller amendments), was adopted in strict conformity to the requirements of section 64 of the Constitution.

It will be noted here that there is no constitutional requirement that in adopting an amendment to an amendment that there shall be an aye and nay vote, the constitutional requirement is that amendments to bills with the names of those voting against the same shall be entered at length on the Journal of the House. Constitution, § 64.

It also affirmatively appears from the House Journal, page 1016 (inspection made by us), that the said bill, as amended, by the substitute reported by the Committee on Civil Laws, as amended, was read a third time at length, and passed by an aye and nay vote of two-thirds of the House, the vote being 63.

ayes and 25 nays, and the names of the members voting for and against the measure were duly entered upon the journal.

It thus appears that all constitutional requirements with respect to the passage of the act by the House were duly observed.

We therefore answer your inquiry with respect to the passage of the act in the affirmative.

■ Answering your inquiry No. 4, we note it is specifically confined to municipalities that have attained their constitutional debt limit, and our response is upon that assumption and restricted thereto.

As we construe the entire act, we consider that your inquiry is answered in the negative by a consideration of the opinion rendered in Re Opinion of the Justices, 226 Ala. 18, 145 So. 481, and In re Opinion of the Justices, 226 Ala. 570, 148 So. 111, provided the city does not undertake to bind itself beyond the new property and its income.

That no lender of money under this act may be in any manner misled, we think it appropriate, however, to make the following observations. Section 2 of the act makes it plain that municipalities embraced in your inquiry borrowing money under this act shall not bind their general credit or incur any personal liability, but that the lender must look alone to the special revenue therein authorized to be pledged for the repayment of the funds so loaned or the interest thereon.

■ We note the provisions of section 4 of the act authorizing, in addition to the security provided in section 3, the execution of a contract with certain stipulations therein set out and to which reference is made without repetition here, which might in the future create obligations and additional indebtedness. Our decisions are to the effect that such municipalities cannot incur an obligation so as to fix a liability for the diversion of pledged funds, or the failure to make a proper assessment for the payment of a street improvement. Steiner v. Town of Capitol Heights, 213 Ala. 539, 105 So. 682; Town of Capitol Heights v. Steiner, 211 Ala. 640, 101 So. 451, 38 A. L. R. 1264. Such a municipality, therefore, cannot bind itself for the proper application of money borrowed under this act, or for the cost of operation and maintenance of the plant, or for the imposition or collection of reasonable rates, or the application of funds thus derived, or for any other obligations mentioned in section 4, though, of course, the city officials may be and are required to perform certain duties in that respect, the violation for which may be chargeable to them personally, and for which they may be held criminally responsible. Sections 3961, 3963, and 1892, Code 1923.

But it is our opinion that any lender to such municipalities upon acquiring any such contract does so with notice it may merely serve as an aid to a direction of the funds specifically pledged into the proper channel, and no obligations could arise thereunder which would constitute any charge against the general credit of such municipalities, or in any manner expand the security taken as restricted by section 2 of the act.

Indeed, we think any such contract should expressly state that its only effect imposed upon the municipality as such, is to impress a lien upon the new property so to be acquired or the income from it.

Or, to state the matter more briefly, section 4 with its contract provisions must necessarily have read into it the restrictions of section 2, considered with all other provisions of the act, to confer upon a city so indebted to the constitutional limit, the power to enter into any such contract, except as thus limited.

Respectfully submitted,

LUCIEN D. GARDNER,
WILLIAM H. THOMAS,
A. B. FOSTER,
THOMAS E. KNIGHT,
Associate Justices.

While in agreement with the general principles of the above opinion, we express our views touching the contractual features of section 4 of the act as follows:

Cities and towns which have reached the debt limit prescribed by section 225 of the state Constitution cannot avail themselves of the terms of section 4 of the act.

This section, by its terms, contemplates a binding contractual obligation upon the city in the proper application of the money borrowed, and in the operation and maintenance of the utility; so as to safeguard the interest of the lender in matter of operation, the imposition of reasonable rates, the faithful collection and remittance of same, etc.; thus imposing on the city a personal obligation and liability for breach of contract, payable from the general revenues of the city, which would constitute a debt under section 225. Hagan v. Commissioner's Court of Limestone County, 160 Ala. 544, 49 So. 417, 37 L. R. A. (N. S.) 1027.

This section 4 has a field of operation in case of cities which have not reached the debt limit.

The general laws of the state seek to safeguard the interest of the lender in such cases by imposing personal liabilities and penalties on the officers and agents acting for the city. See Code, §§ 3961, 3963.

JOHN C. ANDERSON,
Chief Justice.
VIRGIL BOULDIN,
JOEL B. BROWN,
Associate Justices.